**INTERNATIONAL PAPER COMPANY**

v.

**Raymond L. HALPERIN, State Tax Assessor.**

Supreme Judicial Court of Maine.

Argued Jan. 7, 1981.

Decided April 28, 1981.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, James G. Good (orally), Portland, for plaintiff.

Jerome S. Matus (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ.

GLASSMAN, Justice.

In 1975 and 1976, International Paper Company, the plaintiff, was engaged in a $150,000,000 expansion of its pulp and paper mill in Jay, Maine. In connection with this expansion, the company bought numerous new machines and pieces of equipment. Among its purchases were four steel emission stack and breeching systems designed and manufactured to operate in conjunction with a waste fuel boiler, two recovery boilers, two power boilers and a recovery boiler dissolving tank.

All of the boilers and the dissolving tank were exempt from sales and use tax under the so-called "new machinery and equipment exemption," 36 M.R.S.A. § 1760(31), which applies to

> [s]ales of new machinery and equipment for use by the purchaser *directly* and primarily in the production of tangible personal property, which property is intended to be sold or leased ultimately for final use or consumption by manufacturing, processing, assembling, or fabricating. 36 M.R.S.A. § 1760(31) (Supp.1976–77)[1] (emphasis added).

Believing that the new machinery and equipment exemption was not limited merely to the boilers, International Paper did not pay or report a tax on the four emission stack and breeching systems.

By notice dated July 6, 1977, the State Tax Assessor and defendant herein, Raymond L. Halperin, imposed a deficiency assessment of $62,556 on the stack and breeching systems. International Paper timely petitioned for reconsideration. On

---

1. By P.L. 1977, ch. 477, sec. 11, the Legislature deleted the last six words of this provision. At the same time, it added a definition of "produc- tion." *Id.*, sec. 8. These changes do not affect the issues presented.

the ground that the stacks and breeching were real property rather than tangible personal property and, therefore, not eligible for exemption, the Tax Assessor decided to affirm the deficiency assessment. International Paper thereupon appealed his decision to the Superior Court, Kennebec County. Subsequently, on August 25, 1980, International Paper's appeal was reported to this Court pursuant to M.R.Civ.P. 72(b).

As the parties have framed the issues, two questions must be answered in order to determine whether the stack and breeching systems at issue are entitled to a new machinery and equipment exemption under 36 M.R.S.A. § 1760(31): (1) Did these systems become real property upon assembly at the mill and, if so, are they thereby disqualified for a Section 1760(31) exemption? (2) Are the stacks and breeching used "directly and primarily" for the production of paper? We reverse the State Tax Assessor's decision.

## I.

In his brief, the State Tax Assessor does not press the position that the emission stacks are real property. He has stipulated, in fact, that the stacks "are not incorporated in or part of any building." He has also stipulated that the stacks were specifically designed to meet the needs of the different boilers and were delivered in prefabricated, fully engineered sections for assembly; that the life expectancy of the stacks and breeching is comparable to that of the boilers, whereas the life expectancy of the buildings is substantially longer; that the stacks and breeching operate in conjunction with the boilers 100% of the time and this function is exclusive of any other use; that the stacks are freestanding and removable, each being bolted into concrete pads by several dozen anchor bolts; that comparable stacks have been moved by other paper companies and, if the boilers themselves

were relocated, the stack and breeching systems probably would be relocated with them; and that disassembling and moving the stacks would not damage the buildings and would be far simpler than moving a paper machine, a lime kiln, a continuous digester or the boilers themselves, all of which qualify for exemption under Section 1760(31). In view of these stipulated facts, we conclude that the four stack and breeching systems did not become real property upon assembly at the mill but rather remained "tangible personal property" within the meaning of the new machinery and equipment exemption. 36 M.R.S.A. §§ 1760(31), 1811, 1861.[2]

## II.

"Directly" is defined in 36 M.R.S.A. § 1752(2–A) as follows:

"Directly," when used in relation to production of tangible personal property, refers to those activities or operations which constitute an integral and essential part of production, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient, or remote to production. *Id.* (as enacted by P.L.1977, ch. 477).[3]

Relying upon that definition, the State Tax Assessor argues in his brief that the stacks and breeching are merely "smokestacks," that they serve only to release gases *after* the manufacturing process has occurred and that on this basis they must be distinguished from the boilers and other tax-exempt equipment that contribute "directly" to the manufacturing process.

The Tax Assessor's argument is unconvincing. The conversion by chemicals and steam of wood to pulp and pulp to paper begins rather than ends with the activity of the boilers. The waste fuel and power boilers generate steam used to "cook" and bleach pulp, dry paper and run other ma-

---

2. The Internal Revenue Service has reached a similar conclusion with respect to the duct work and stack of the gas-fume system in a 200- to 300-ton basic oxygen furnace, finding that these are tangible personal property rather than building components for purposes of the federal investment tax credit under I.R.C. § 38

(1954). *See* Rev.Rule 79–181, 1979–1 C.B. 41–2.

3. Although subdivision 2–A was added subsequent to the purchases at issue, we deem it declaratory of existing law.

chines. The recovery boilers perform the same function and, in addition, reclaim and process from a liquid wood residual fuel certain chemicals used in making pulp. Once "recovered," these chemicals are passed to dissolving tanks to be mixed with water. The fourth stack here at issue, that which is connected with a recovery boiler dissolving tank, removes vapors arising out of this chemical and water mix. The other three stacks, those connected with the boilers proper, not only remove harmful vapors and gases but also provide draft integral to maintenance of the temperature, pressure and output of the steam used in the manufacturing process.

After this action was initiated, the State Tax Assessor informed International Paper that the recovery boiler dissolving tank stack would, after all, qualify for a new machinery and equipment exemption. In effect, he thus concluded that the dissolving tank stack was used "directly" in the production of paper. 36 M.R.S.A. § 1760(31). The Tax Assessor's change of mind with respect to the fourth stack was warranted. *See Niagara Mohawk Power Corp. v. Wanamaker,* 286 A.D. 446, 144 N.Y.S.2d 458 (1955); *Ohio Edison Co. v. Porterfield,* 28 Ohio St.2d 150, 277 N.E.2d 195 (1971); *Commonwealth v. Yorktowne Paper Mills, Inc.,* 426 Pa. 18, 231 A.2d 287 (1967). We see no rational justification, however, for exempting the dissolving tank stack, which vents waste gases, and refusing to exempt the three boiler stacks, which in addition to removing waste gases also provide an indispensable prerequisite to adequate steam generation—draft.[4]

The parties have stipulated that the boiler stacks and breeching are as essential as the boilers themselves to the production of paper. On this record, we are fully satisfied that all four stack and breeching systems are entitled to tax exemption under 36 M.R.S.A. § 1760(31).

The entry is:

Remanded to the Superior Court with directions to enter judgment for plaintiff ordering the defendant to set aside the deficiency assessment against the plaintiff.

All concurring.

---

4. We similarly do not understand why, at the time of exempting the dissolving tank stack, the Assessor also exempted *only* portions of the breeching located between the boilers and other equipment such as air heaters, fans and dust collectors. The Assessor has asserted in this appeal that it is the use to which a particular item is put that determines that item's tax status. Yet he has admitted that the portions of the breeching not located between the boilers and the other equipment, but instead between the other equipment and the stacks, are functionally as well as physically identical with the portions to which he grants an exemption.