**GEORGIA–PACIFIC CORPORATION**

**v.**

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued March 9, 1989.
Decided July 25, 1989.

---

James G. Good, Daniel W. Emery (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for plaintiff.

James E. Tierney, Atty. Gen., Crombie J.D. Garrett (orally), Deputy Atty. Gen., Francis Ackerman, Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

GLASSMAN, Justice.

Georgia–Pacific Corporation (Georgia–Pacific) appeals from a summary judgment granted by the Superior Court (Kennebec County, *Alexander, J.*) to the State Tax Assessor contending that the trial court erred in its interpretation of the term "contract carrier" in the statutory definition of sale price and in its determination that transportation costs were included in and taxable as a part of the sales price of hog fuel purchased by Georgia–Pacific. We affirm the judgment.

In 1980 Georgia–Pacific entered into written contracts with nine vendors for hog fuel.[1] The contracts stated that passage of title occurred at the point of origin for transportation and separated the sale price of the hog fuel from the transportation costs. Only one of the vendors was registered as a contract carrier with the Public Utilities Commission (PUC) during January 1, 1980 to December 31, 1981, the time period that the State Tax Assessor assessed a use tax with interest on the transportation costs.

Georgia–Pacific appeals from a summary judgment entered by the Superior Court in the Tax Assessor's favor and challenges the trial court's interpretation that the transportation charges associated with the sale of the hog fuel are part of the taxable sale price. Pursuant to the sales and use tax law, use tax is assessed "on the storage, use or other consumption in this State of tangible personal property, purchased at retail sale, at the rate of 5% of the sale price." 36 M.R.S.A. § 1861 (1978).[2] "Sale price," in relevant part, is defined as

[T]he total amount ... of a retail sale, including any services that are a part of such sale.... "Sale price" shall not include ... the cost of transportation from the retailer's place of business or other point from which shipment is made directly to the purchaser provided such charges are separately stated and provided such transportation occurs by means of common carrier, contract carrier or the United States mails.

*Id.* § 1752(14).[3] It is undisputed that the charges at issue here were for transportation directly from the vendors of the hog fuel to Georgia–Pacific, that the charges were separately stated as required under section 1752(14), and that the shipment was not by common carrier or United States mails.

The Superior Court held that the carriers were not "contract carriers" within the sales tax provision because the hog fuel had not been transported by carriers having a permit issued by the PUC, *see* 35 M.R.S.A. § 1555 (1978), *repealed by* P.L. 1981, ch. 469, § 54, and because the carriers were delivering goods originating in their own manufacturing facilities.

■ We agree with Georgia–Pacific that the Superior Court erred in interpreting "contract carrier" to require registration under the public utilities and carrier statute. *See* 35 M.R.S.A. §§ 1555–1646, *repealed by* P.L.1981, ch. 469, §§ 54–55, P.L. 1983, ch. 234, § 7. The plain and ordinary meaning of the term does not include such a registration. Further, the term "contract carrier" as used in the public utilities and

---

1. Hog fuel is comprised of waste bark or wood chips and is used by Georgia–Pacific as fuel for boilers.

2. Since the relevant time period of this appeal 36 M.R.S.A. § 1861 (1978) has been repealed and replaced by P.L.1985, ch. 783, § 7, *amended by* P.L.1987, ch. 497, § 41.

3. 36 M.R.S.A. § 1752(14), as amended by P.L. 1983, ch. 828, § 4, has been repealed and replaced by P.L.1987, ch. 497, § 24. Although the structure of the statute has changed, the wording of the relevant parts addressing sales price and transportation costs have not changed.

carrier statute is expressly limited by section 1555 to provisions of that statute. *See* 35 M.R.S.A. § 1555 (1978), *repealed by* P.L. 1981, ch. 469, § 54.

We do not agree with the contention of Georgia–Pacific that the vendors of the hog fuel were contract carriers within the meaning of section 1752(14). Georgia–Pacific argues that in order to meet the test for the exclusion of transportation costs from the sale price it is only necessary that the title of the hog fuel have passed to Georgia–Pacific at the place of origin and the vendor's costs for transportation to Georgia–Pacific be separately stated from the price of the hog fuel. The assessor's interpretation requires a third requirement, namely, that the transporter must be a party other than the vendor.

The term "contract carrier" is not defined in the governing statute. We have previously recognized "that the construction of a statute utilized by those whose duty it is to make the statute operative is entitled to great deference by a court when called upon to construe the statute." *Kelley v. Halperin*, 390 A.2d 1078, 1080 (Me. 1978). In *Kelley*, we upheld the Assessor's interpretation of the inheritance tax law stating "[s]ince there is nothing in the language of this enactment which makes the interpretation given by the State Tax Assessor contrary to expressed legislative purpose, it is entirely appropriate to look to its contemporaneous construction by the defendant as a guide." *Id.* (citing *Mottram v. State*, 232 A.2d 809, 816 (Me. 1967)). More recently we stated that "[w]e shall accept the agency's construction, especially if ... it is long established or contemporaneous with the statute, unless it clearly violates the legislative intent." *Bar Harbor Banking and Trust Co. v. Bureau of Consumer Protection*, 471 A.2d 292, 296 (Me.1984).

In the present case the Assessor's interpretation is both longstanding and contemporaneous with the enactment of the version of the statute in question. General Information Bulletin No. 34, dated September 30, 1963, set forth the 1963 changes in the Sales and Use Tax Law. Included therein was a paragraph dealing with transportation charges:

### 2. TRANSPORTATION CHARGES.

On and after September 21, transportation charges representing transportation from the retailer's place of business or other point from which shipment is made directly to the purchaser is not taxable provided that the transportation charges are separately stated and further provided that the transportation occurs by means of common carrier, contract carrier or the United States mails. *Transportation occurring by means of the seller's own vehicles when a separate charge is made is still taxable even though separately stated on the invoice.*

Me. Bureau Tax'n, General Information Bulletin No. 34 (Sept. 30, 1963). (Emphasis supplied). Because there is nothing in the language of the statute indicating a contrary legislative purpose, we defer to the Assessor's interpretation.

Moreover, the legislative history supports the Assessor's interpretation. Prior to the version of the statute at issue in the present case, "sales price" was defined, in relevant part as "the total amount of the sale ..., of a retail sale, including any services that are a part of such sale.... 'Sale price' shall not include transportation charges separately stated if the transportation occurs after the purchase of the property is made." P.L.1951, ch. 250, § 2. An affidavit of the Supervisor of the Sales Tax Section of the Maine Bureau of Taxation states that the Sales Tax Section records indicate that the Bureau consistently construed this language to mean that charges for transportation occurring prior to passage of title to the goods were included in the sale price and therefore taxable; charges for transportation occurring after passage of title were not included and therefore not taxable. In a letter to the Taxation Committee regarding the proposed 1963 amendment which, with the exception of one word, became the version of the statute at issue, the State Tax Assessor described difficulties with the administration of the then existing statute and interpreted the proposed amendment as follows:

In the past the Bureau has had continuous difficulty in determining the taxability of transportation charges under the sales and use tax law. The difficulty stems from the fact that, in order to determine whether transportation charges are deductible for sales tax purposes, it is necessary to determine at what point title to the goods passes to the customer.

The bill presents an attempt to get away from this difficulty. By this amendment, we would hope that transportation charges in connection with a sale, where such charges are identifiable, and where transportation is by a carrier independent of the vendor would be excluded from the tax base regardless of where title passes. *By the same token, where the transportation is by the vendor himself, any extra charge for transportation would be included in the tax base regardless of where title passes.* (Emphasis supplied). The amendment passed. The language that sale price shall not include "transportation charges separately stated, if the transportation occurs after the purchase of the property is made" was deleted and the following language was inserted: "the cost of transportation from the retailer's place of business or other point from which shipment is made directly to the purchaser provided such charges are separately stated and provided such transportation occurs by means of common carrier, contract carrier or the United States mails." There was no legislative discussion or statement of fact accompanying the amendment. The letter from the State Tax Assessor constituted the single available tax committee document regarding the amendment and demonstrates that the Legislature intended to delete the title test for determining whether transportation costs were taxable as part of the sales price of tangible goods.

The entry is: Judgment affirmed.

All concurring.