**SCOTT PAPER COMPANY**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued Jan. 21, 1992.

Decided July 17, 1992.

---

Sarah H. Beard, James G. Good (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for plaintiff.

Michael E. Carpenter, Atty. Gen., Crombie J.D. Garrett (orally), Deputy Atty. Gen., David E. Bauer, Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Chief Justice.

The State Tax Assessor appeals from a summary judgment granted in favor of Scott Paper Company. On appeal, the State argues that the Superior Court (Kennebec County, *Chandler, J.*) misinterpreted the production machinery and equipment exemption (36 M.R.S.A. § 1760(31) (1990)) to Maine's sale and use tax. The State contends that in order to qualify for the exemption the purchaser of equipment or machinery must continue to own the property while it is used for the exempt purpose. Finding no error in the judgment of the Superior Court, we affirm.

The undisputed facts concerning Scott's purchase and use of the equipment may be briefly summarized as follows: In 1980, Scott's Board of Directors approved the construction of a biomass boiler cogeneration facility at its S.D. Warren mill in Westbrook. The facility occupies approximately ten acres and was custom designed for the mill and forms an integral part of the production process. Primarily, the equipment at issue was purchased by Scott and incorporated into the facility during the sixteen months following Board approval of construction. At the end of the sixteen-month period and before operation of the facility commenced, Scott entered into negotiations with General Electric Credit Corporation (GECC) and transferred the facility to GECC as part of a financing arrangement. Simultaneously, GECC leased the facility back to Scott for a term of twenty-five years with an option for renewal by Scott for the remainder of the facility's useful life. Scott constructed the facility without any assurance that financing would be available and would have continued to own and use the facility even in the absence of financing. Pursuant to its lease with

GECC, Scott has retained exclusive use and possession of the facility. Scott has maintained the facility, controlled its operation, and determined its operating standards.

Acting pursuant to 36 M.R.S.A. § 1861 (1990), the State assessed a use tax on the initial transaction in which Scott purchased the equipment installed in the cogeneration facility. Scott unsuccessfully petitioned for reconsideration of the assessment, arguing that by purchasing and using the equipment it came within the terms of the exemption provided in 36 M.R.S.A. § 1760(31). On a petition for review, the Superior Court accepted Scott's argument and granted summary judgment with regard to the equipment at issue. This appeal followed.

█ It is the State's position that the Superior Court misinterpreted 36 M.R.S.A. § 1760(31) and erred in finding that Scott met its burden of establishing that the exemption applies. *Silverman v. Town of Alton*, 451 A.2d 103, 105 (Me.1982). The applicable exemption reads as follows:

> No tax on sales, storage or use shall be collected upon or in connection with:
>
> . . . .
>
> Sales of new machinery or equipment for use by the purchaser directly and primarily in the production of tangible personal property, which property is intended to be sold or leased ultimately for final use or consumption. . . .

36 M.R.S.A. § 1760(31) (1990). Use is defined as "the exercise of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale. . . ." 36 M.R.S.A. § 1752(21) (1990). The State argues that Scott's possession and storage of the equipment,[1] constituted a taxable use of tangible personal property because the equipment was not used for the exempt purpose prior to the sale to GECC. There is no dispute that, had Scott not sold the equipment to GECC, the exemption would apply.

█ By affidavit, the Director of the Audit Division of the Bureau of Taxation as-serts that since section 1760(31) was first enacted in 1973, the Bureau "has taken the position that a person is entitled to [the machinery and equipment exemption] only if he owns the equipment at the time of its use for an exempt purpose." The documentary exhibits offered in support of the Director's assertion consists of a series of letters written in response to taxpayer inquiries over the years. The letters, however, state the proposition somewhat differently: "Where property is purchased by the manufacturer for purposes of selling to the bank with a leaseback arrangement, it would not be considered purchased for use in production by the purchaser." The State extrapolates from this statement the interpretation that a purchase, followed by a sale and leaseback of equipment, does not qualify for the exemption unless the original purchaser actually uses the equipment for the exempt purpose prior to the secondary sale. Although we are ordinarily required to defer to assessor's interpretation of the statute, the plain meaning of a statute always controls over an inconsistent administrative interpretation. *Brousseau v. Maine Employment Sec. Comm'n*, 470 A.2d 327, 330 (Me.1984).

The parties argue at length whether use by a lessee qualifies as an exempt use, but we need not address that issue. The exemption is extended to the purchase of new machinery *for use* by the purchaser in the production of tangible personal property. On the facts before us, it is undisputed that the equipment was purchased by Scott for its use in the production of paper products. Unlike the situations addressed in the first of the letters submitted by the State, here the taxpayer did not purchase the equipment for the purpose of selling it to a financier with a leaseback arrangement. Rather the equipment was purchased for use in the production process and the financing arrangements occurred long after the purchase that is alleged to be the source of tax liability. Moreover, Scott has made actual use of the equipment primarily

---

1. There is nothing to suggest that Scott purchased the equipment for the purpose of placing it in storage. Naturally the process of construc-tion and installation necessarily involved both possession and storage.

and directly in its production processes, albeit after selling to GECC and leasing back. The literal terms of subsection 31 have been complied with.

The entry is:

Judgment of the Superior Court affirmed.

CLIFFORD and COLLINS, JJ., concurring.

GLASSMAN, Justice with whom ROBERTS, Justice, joins, dissenting.

Because I believe that the Tax Assessor's interpretation of 36 M.R.S.A. § 1760(31) (1990) is not contrary to its expressed legislative purpose and thus is entitled to great deference by this court, I respectfully dissent. We have previously stated that "in construing a tax exemption statute, the underlying deep-seated policy of this Court is that taxation is the rule and tax exemption is the exception" and that "all doubt and meaning of the statute and legislative intendment must be weighed against exemption." *Silverman v. Town of Alton*, 451 A.2d 103, 105 (Me.1982). A party claiming a tax exemption has the burden of establishing that the claimed exemption is clearly within the provisions of the statute. *Id.* It is well established Maine law that "an exemption from taxation, while entitled to reasonable interpretation in accordance with its purpose, is not to be extended by application to situations not clearly coming within the scope of the exemption provisions." *Harold MacQuinn, Inc. v. Halperin*, 415 A.2d 818, 820 (Me.1980).

In the instant case, Scott's position, with which the court agrees, is that because it did not purchase the machinery and equipment for the *purpose* of selling it to GECC and has made actual use of it in its production processes it is entitled to the tax exemption provided in 36 M.R.S.A. § 1760(31). Technically speaking, Scott seeks an extension of the meaning of the words "use by the purchaser ... in the

production" to include use by the initial purchaser after that purchaser has sold the machinery and equipment to another. The Tax Assessor's position is that the *purpose* of the purchase is neither addressed in the statute nor a determinative factor; rather, it is the *use* of the machinery and equipment by the purchaser that determines its tax status, and a purchaser that sells the machinery or equipment before using it in the production of tangible personal property is not entitled to the tax exemption provided in section 1760(31). In determining the applicability of the exemption provided in 36 M.R.S.A. § 1760(31) to the situation presented by Scott, the statute must be read in light of sections 1861,[2] 1752(15) and 1752(21), defining terms used in the legislation governing sales and use taxes:

Section 1861 provides: A tax is imposed on the storage, use or other consumption in this State of tangible personal property, purchased at retail sale, at the rate of 5% of the sale price.

Section 1752(15) provides: "Storage" includes any *keeping or retention* in this State *for any purpose*, except subsequent use outside of this State, of tangible personal property purchased at retail sale.

Section 1752(21) provides: "Use" includes the exercise in this State of any right or power over tangible personal property *incident to its ownership* when purchased by the user at retail sale....

(emphasis added).

It is undisputed that during the period of Scott's *ownership* of the machinery and equipment the only *use* made of it was to install it in a facility. Thereafter, Scott sold the machinery and equipment, together with the facility in which it was located (stored), to GECC. Implicit in ownership of any property is the right of possession and the right to completely control its use. At the moment of this sale, Scott not only relinquished these inherent rights of ownership but became the *seller* of the machinery and equipment. The possession and use of the machinery and equipment there-

---

2. Since the dates at issue here, this statute has been amended by P.L.1985, ch. 783, § 7 and P.L.1987, ch. 497, § 41.

after was solely within the control of GECC. Scott's *use* of the machinery and equipment *in the production of tangible personal property* was not in its capacity as *purchaser* but as the *seller* who had a contractual relationship with the *purchaser* that allowed such use pursuant to the terms of the leaseback agreement between the parties.

We have frequently stated that:

[T]he construction of a statute utilized by those whose duty it is to make the statute operative is entitled to great deference by a court when called upon to construe the statute. [If] there is nothing in the language of th[e] enactment which makes the interpretation given by the State Tax Assessor contrary to expressed legislative purpose, it is entirely appropriate to look to its contemporaneous construction by the [Tax Assessor] as a guide.

*Kelley v. Halperin,* 390 A.2d 1078, 1080 (Me.1978) (quoted with approval by *Georgia–Pacific Corp. v. State Tax Assessor,* 562 A.2d 672, 674 (Me.1989); *see also Imagineering, Inc. v. Sup't of Insurance,* 593 A.2d 1050, 1053 (Me.1991) ("[o]n questions involving the interpretation and application of technical statutes or regulations, this court gives deference to the administrative agency unless the statutes or regulations plainly compel a contrary result"). I agree with the Tax Assessor that Scott's use of the machinery and equipment for production of tangible personal property was not " 'use by the purchaser' within the scope of an exemption that the legislature has left carefully circumscribed despite efforts to broaden it." *Harold MacQuinn, Inc. v. Halperin,* 415 A.2d at 822. I also agree with the Tax Assessor that as *the purchaser of new machinery and equipment* Scott did nothing but store it within the clear meaning of section 1752(15), and the Tax Assessor properly imposed a tax on that storage as provided by section 1861. Accordingly, I would vacate the judgment of the Superior Court and affirm the decision of the Tax Assessor.