UAH–HYDRO KENNEBEC, L.P.

v.

STATE TAX ASSESSOR.

Supreme Judicial Court of Maine.

Argued March 15, 1995.
Decided June 14, 1995.

Michael L. Sheehan (orally), Geoffrey K. Cummings, Preti, Flaherty, Beliveau & Pachios, Portland, for plaintiff.

Clifford B. Olson (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

UAH–Hydro Kennebec, a Maine limited partnership, appeals from a judgment of the Superior Court (Kennebec County, *Chandler, J.*) affirming a use tax assessment. UAH argues that bascule gates attached to a dam at its Winslow hydroelectric facility qualify for the production exemption from use tax pursuant to 36 M.R.S.A. § 1760(31) (1990). We agree, and accordingly vacate the judgment.

UAH owns a hydroelectric facility on the Kennebec River near Winslow on land leased from Scott Paper Company. The plant is a run-of-the-river facility, which means that the flow of the river upstream of the facility must equal the downstream flow at all times. The facility includes a dam that functions to maintain the water elevation upstream of the facility at 81 feet above sea level. Attached by metal hinges to the dam are three bascule gates, each of which is 13 feet high and 60 feet long. A computer-controlled hydraulic system opens each gate to the extent neces-sary to maintain the upstream elevation of the river at 81 feet and to allow water to pass the facility without flowing through the turbines. Without the bascule gates, a different dam structure with a lower upstream elevation would be required, producing less energy than the current facility.

The Assessor assessed a use tax against UAH in September 1990 that included a negligence penalty and a penalty for failure to pay use tax on the purchase price of the bascule gates. The Assessor sought $39,672.85 in taxes, along with interest in the amount of $8,848.78 and penalties in the amount of $13,885.50. UAH petitioned for reconsideration, arguing that it was entitled to an exemption from use tax pursuant to 36 M.R.S.A. § 1760(31) [1] because the gates were tangible personal property used primarily in the production of electricity. The Assessor denied UAH's petition, finding that the gates were "real estate used in the storage of water, not machinery and equipment used in the production of electricity."

On December 6, 1991, UAH filed a complaint for judicial review in the Superior Court pursuant to 36 M.R.S.A. § 151 (1990) and 5 M.R.S.A. § 11001–11011 (1989 & Supp. 1994). On July 19, 1994, the court granted a summary judgment in favor of the Assessor. The court vacated only that portion of the assessment that imposed a 10% negligence penalty against UAH. This appeal followed.

Our interpretation of 36 M.R.S.A. § 151 as it existed at the time of our decision in *Jackson Advertising Corp. v. State Tax Assessor,* 551 A.2d 1365 (Me.1988), governs the scope of judicial review of the Assessor's decision in this case. That statute has been amended since *Jackson Advertising,*[2] but this proceeding was pending at the time those amendments took effect. *See Riley v. Bath Iron Works Corp.,* 639 A.2d 626, 627–29 (Me. 1994). Pursuant to *Jackson Advertising,* judicial review of the Assessor's decision is

---

1. 36 M.R.S.A. § 1760(31) (1990) provides an exemption from sales and use tax for:

    Sales of machinery and equipment for use by the purchaser directly and primarily in either the production of tangible personal property, which property is intended to be sold or leased ultimately for final use or consumption, or the production of tangible personal property pur-suant to a contract with the United States Government or any agency thereof.

2. P.L.1991, ch. 824, § B–10 (effective April 6, 1992); P.L.1991, ch. 873, § 3 (effective June 30, 1992); P.L.1993, ch. 395, § 2 (effective June 21, 1993).

"confined to a 'complete review of questions of law and to limited review of questions of fact only to test the reasonableness of the conclusions reached.'" *Jackson Advertising Corp. v. State Tax Assessor,* 551 A.2d at 1366 (citations omitted). Resolution of this case requires us to review the Assessor's interpretation of 36 M.R.S.A. § 1760(31). Although the Court will usually defer to the Assessor's interpretation of the exemption statute, the plain meaning of the statute always controls over an inconsistent administrative interpretation. *See Scott Paper Co. v. State Tax Assessor,* 610 A.2d 275, 277 (Me.1992).

The Assessor contends that machinery and equipment purchased to be affixed to real property cannot constitute machinery and equipment purchased for use in the production of tangible personal property within the meaning of the statute. In the alternative, he argues that the bascule gates are not used directly in the production of tangible personal property in any event. We address each argument in turn.

■ The Assessor's assumption that the status of the gates as fixtures precludes an exemption appears nowhere in the plain language of the statute.[3] The statute requires only that the property in question be "machinery and equipment" that is used "primarily in the production of tangible personal property." 36 M.R.S.A. § 1760(31). If so, it is immaterial whether that machinery or equipment is affixed to the realty. The Assessor's interpretation of section 1760(31) would add a requirement that the machinery and equipment remain tangible personal property. In *Scott Paper* we rejected a similar attempt by the Assessor to add a requirement to the exemption statute that the taxpayer own the exempt property at the time of its use. *See Scott Paper Co. v. State Tax Assessor,* 610 A.2d at 277.

There is no dispute that the gates are machinery and/or equipment within the

meaning of the statute. Similarly, there is no dispute that the bascule gates are used exclusively to maintain the appropriate head pond elevation. Therefore, if maintenance of the appropriate head pond level is directly related to production, then the gates are "primarily" used in production. *See* 36 M.R.S.A. § 1752(9–A) (1988) ("'Primarily,' when used in relation to production, means more than 50% of the time.").

■ The Assessor's argument that the gates are not directly related to the production of electricity is inconsistent with our prior interpretation of 36 M.R.S.A. § 1752(2–A) (1990), which defines "directly," for purposes of the production exemption, as follows:

"Directly," when used in relation to production of tangible personal property, refers to those activities or operations which constitute an integral and essential part of production, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to production.

In *International Paper Co. v. Halperin,* 428 A.2d 1182 (Me.1981), we held that boiler stacks were essential to the production of paper because they allowed waste gases to escape from the boilers and provided draft needed to keep the boilers operating efficiently. *Id.* at 1184. In this case, the Assessor concedes that the bascule gates allow the hydro plant to maintain optimal flow through the turbines. Without the gates, the facility would not function efficiently. Applying the *International Paper Co.* analysis, the gates are an essential part of the production process. They are therefore exempt from the use tax.

The UAH position is supported by authority from other jurisdictions as well. *See City of Ames v. State Tax Comm'n,* 246 Iowa 1016, 71 N.W.2d 15, 23 (1955) (equipment

---

**3.** The Assessor relies on *Katz v. State Tax Assessor,* 472 A.2d 428 (Me.1984), for the proposition that property purchased for incorporation into real estate cannot be used in the production of tangible personal property. *Katz* merely established that the incorporation of personal property into realty prior to passage of title to a buyer triggers a use tax payable by the contractor. *Id.*

at 430. Passage of title prior to incorporation into realty triggers a sales tax. *Id.* at 431. *Katz* had nothing to do with the production exemption. Moreover, it involved the sale of floor coverings that were incorporated into apartment buildings by the seller. It is therefore factually distinguishable from the instant case.

required for efficient operation of plant is an essential part of production); *Niagara Mohawk Power Corp. v. Wanamaker*, 286 A.D. 446, 144 N.Y.S.2d 458, 461–62 (1955) (hoppers carrying coal to boiler are used directly in production of electricity); *Cincinnati Gas & Elec. Co. v. Kosydar*, 38 Ohio St.2d 71, 67 O.O.2d 81, 84–85, 310 N.E.2d 245, 248 (1974) (production exemption is available for property that is essential to the production process).

The Assessor's argument that the gates are used for storage of water, not production, is unpersuasive. It is undisputed that the river flow downstream of the facility must equal the flow upstream at all times. "Storage" is defined for use tax purposes as "keeping or retention ... of tangible personal property." 36 M.R.S.A. § 1752(15) (1990). No water is kept, retained, or even slowed by the dam and the gates. The dam is at most a funnel, channeling the water through the turbines. That function is squarely within the definition of "production" as amplified by 08–125 C.M.R. 303.01(A) (Bur. of Tax., *eff.* June 1, 1951): " 'Production' referred to in § 1752(9–B) commences with the movement of raw materials to the first production machine after their receipt and storage at the production site (after receipt if the materials are not stored)."

The entry is:

Judgment vacated.

Remanded for the entry of a judgment vacating the assessment.

All concurring.