**SST & S, INC.**

**v.**

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued Feb. 6, 1996.

Decided April 30, 1996.

Kurt E. Olafsen (orally), Olafsen & Butterfield, Portland, for Appellant.

Andrew Ketterer, Attorney General and Dennis M. Doiron, Assistant Attorney General (orally), Augusta, for Appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and LIPEZ, JJ.

GLASSMAN, Justice.

SST & S, Inc. (the Company) appeals from the judgment entered in the Superior Court (Hancock County, *Atwood, J.*) in favor of the State Tax Assessor on its complaint seeking judicial review, pursuant to 36 M.R.S.A. § 151 (Supp.1995) and 5 M.R.S.A. § 11002 (1989), of the assessment of a use tax imposed on certain of its tangible personal property. The Company contends the trial court erred in concluding that the Assessor properly determined the property does not qualify for tax exemption pursuant to 36 M.R.S.A. § 1760(31) (1990). We affirm the judgment.

The record reveals the following undisputed facts: SST & S, formerly Stinson Canning Company, is a Maine corporation engaged in commercial fishing, processing, and canning. Part of the Company's business consists of acquiring fish from fishing vessels at Lubec and transporting them to a facility at Prospect Harbor where they are processed, cut and canned. In the mid–1980s, the Company considered investing in automated grading and cutting machines for their Prospect Harbor plant to replace the existing method of cutting fish by hand. In testing various machines, it learned that the effectiveness of automated grading and cutting equipment depended on the consistency of the fish arriving at the plant. Specifically, fish that had become soft in consistency would fall through the grading machine and would bind in the automated cutting blades.

To preserve fish during their transport from Lubec to Prospect Harbor, the Company employed a traditional salting method. Although this method prevented bacterial spoilage, it did not prevent the fish from becoming soft. Accordingly, when the Company ultimately purchased the automated grading and cutting equipment for its Prospect Harbor plant, it also replaced its salting method with equipment designed to maintain the original rigidity of the fish. This equipment consists of an ice maker near the docks at Lubec that produces ice which is conveyed to a mixing tank and blended with brine. The ice/brine slurry is then transferred into plastic, insulated totes located on a conveyor belt. A vacuum system pumps fish off the fishing vessels into the totes. The totes filled with both the ice/brine slurry and fish are transported by truck to the plant at Prospect Harbor. By this means, the fish maintain their firmness on arrival at the plant and can be graded and cut automatically.

In February 1989, the Assessor assessed a use tax on certain equipment used by the Company. In response to the Company's petition, pursuant to 36 M.R.S.A. § 151, for an administrative reconsideration of the assessment, the Assessor affirmed its assessment of a use tax on the icing equipment.[1]

---

1. The Assessor had also assessed a use tax on sardine carrier vessels and the development of a custom computer program. On the Company's petition for reconsideration, the Assessor determined that the sardine carrier vessels were not taxable. The company does not challenge the Assessor's determination that the development of a custom computer program is taxable.

The Company filed the present complaint seeking a judicial review of the Assessor's decision. Following a hearing, the court determined that the Assessor rationally could have concluded that the Company failed to establish that the contested property is exempt from taxation. From the judgment entered affirming the Assessor's decision, the Company appeals.

## I

Section 151 of Title 36 governs the scope of judicial review of decisions by the Assessor. 36 M.R.S.A. § 151. Section 151 has been amended several times in recent years,[2] most notably by P.L.1991, ch. 873, § 3, establishing that the Superior Court "functions as the forum of origin for a determination of both facts and law." *Enerquin Air, Inc. v. State Tax Assessor,* 670 A.2d 926, 928 (Me.1996). These amendments are not applicable when, as here, the proceedings have been instituted before the court prior to the effective dates of the amendments. *UAH–Hydro Kennebec v. State Tax Assessor,* 659 A.2d 865, 866 (Me.1995); *Riley v. Bath Iron Works Corp.,* 639 A.2d 626 (Me. 1994). Accordingly, "[o]ur interpretation of [section] 151 as it existed at the time of our decision in *Jackson Advertising Corp. v. State Tax Assessor,* ... governs the scope of judicial review of the Assessor's decision in this case." *UAH–Hydro Kennebec,* 659 A.2d at 866. Pursuant to this interpretation of section 151, the trial court is authorized to conduct a *de novo* hearing to provide a substitute record for review. *Jackson Advertising Corp. v. State Tax Assessor,* 551 A.2d 1365, 1366 (Me.1988). The review, however, must be "confined to a 'complete review of questions of law and to limited review of questions of fact only to test the reasonableness of the conclusions reached.'" *UAH–Hydro Kennebec,* 659 A.2d at 867 (quoting

*Jackson Advertising Corp.,* 551 A.2d at 1366 (citations omitted)). In accordance with this limited scope of judicial review, we examine the record developed before the trial court to determine if the Assessor, applying the relevant law, rationally could have concluded that the Company failed to establish that its icing equipment is exempt from taxation. *Jackson Advertising,* 551 A.2d at 1366–67.

## II

The tax involved in this case was assessed pursuant to 36 M.R.S.A. § 1861 (Supp.1995)[3] that provides for the imposition of a tax "on the storage, use or other consumption in this State of tangible personal property...." The "use" subject to taxation is defined in pertinent part by 36 M.R.S.A. § 1752(21) (1990) as "the exercise in this State of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale...."

The State of Maine exempts from sales and use taxation "[s]ales of machinery and equipment for use by the purchaser directly and primarily in ... the production of tangible personal property, which property is intended to be sold or leased ultimately for final use or consumption...." 36 M.R.S.A. § 1760(31).[4] The word "directly" as used in section 1760(31) is defined as follows:

"Directly," when used in relation to production of tangible personal property, refers to those activities or operations which constitute an integral and essential part of production, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to production.

36 M.R.S.A. § 1752(2–A) (1990). "'Primarily,' when used in relation to production, means more than 50% of the time." 36

---

2. P.L.1991, ch. 824, § B–10 (effective April 6, 1992); P.L.1991, ch. 873, § 3 (effective June 30, 1992); P.L.1993, ch. 395, § 2 (effective June 21, 1993).

3. Subsequent to the audit period at issue in this case, section 1861 was repealed and replaced by P.L.1991, ch. 846, § 25 (effective April 9, 1992). The current version of section 1861 differs from the version applicable in the instant action only

in that it does not restrict imposition of the use tax to the sale of services occurring in this state and was made gender neutral.

4. During a portion of the audit period at issue in this case, the word "machinery" was preceded by the word "new." The deletion of the word "new" by P.L.1985, ch. 276, § 3 (effective Sept. 19, 1985), has no effect on the issues before us.

M.R.S.A. § 1752(9–A) (1990). "Production" is defined as follows:

> "Production" means an operation or integrated series of operations engaged in as a business or segment of a business which transforms or converts personal property by physical, chemical or other means into a different form, composition or character from that in which it originally existed.
>
> Production includes manufacturing, processing, assembling and fabricating operations which meet the definitional requisites.
>
> Production does not include biological processes, wood harvesting operations, the severance of sand, gravel, oil, gas or other natural resources produced or severed from the soil or water, or activities such as cooking or preparing drinks, meals, food or food products by a retailer for retail sale. The foregoing are examples of activities that are not included within the term "production."

36 M.R.S.A. § 1752(9–B) (1990).[5] Pursuant to the statutory authority provided by 36 M.R.S.A. § 112(1) (Supp.1995),[6] the Assessor promulgated the following rule:

> "Production" referred to in § 1752(9–B) commences with the movement of raw materials to the first production machine after their receipt and storage at production site (after receipt if the raw materials are not stored) and ends with the completion of the finished product, including any packaging operation. The acquisition of raw materials, the transportation of raw materials or goods in process between production sites, and administrative and distributive operations do not constitute production.

08–125 C.M.R. 303.01(A) (Bur. of Tax., effective June 1, 1951).

■ The well settled principle that "taxation is the rule and tax exemption is the exception," *Connecticut Bank & Trust Co. v. City of Westbrook,* 477 A.2d 269, 271 (Me. 1984) (quoting *Silverman v. Town of Alton,* 451 A.2d 103, 105 (Me.1982)), places the burden on the Company to bring its request "unmistakably within the spirit and intent" of the claimed exemption. *Episcopal Camp Found., Inc. v. Town of Hope,* 666 A.2d 108, 110 (Me.1995) (quoting *Holbrook Island Sanctuary v. Town of Brooksville,* 161 Me. 476, 483, 214 A.2d 660, 664 (1965) (citations omitted)).

■ The Company contends that pursuant to section 1760(31), its icing equipment is exempt from the imposed use tax. In support of this contention, it initially argues that because the rule promulgated as 08–125 C.M.R. 303.01(A) imposed a "location based test," it is inconsistent with the statutory definition of "production" and must be disregarded. We disagree.

We have previously noted that absent language in the statute making the interpretative ruling of the Assessor contrary to the expressed legislative purpose, we give deference to that ruling when called on to construe the statute. *Robbins v. State Tax Assessor,* 536 A.2d 1127, 1128 (Me.1988); *Kelley v. Halperin,* 390 A.2d 1078, 1080 (Me.1978). Here, the Assessor's interpretation does not impose a "locational test"; rather, it provides an amplification of the definition of "production" and is not inconsistent with section 1752(9–B).

■ Although the Company concedes that the use of the icing equipment does not transform or convert the form, composition, or character of the fish, it next argues that because section 1752(2–A) only requires that the machinery and equipment be an integral and essential part of the production process, the icing equipment must be exempt from taxation. The Company's reliance on our decision in *UAH–Hydro Kennebec v. State Tax Assessor,* 659 A.2d at 865, to support its

---

5. During a portion of the audit period at issue in this case, the words "set forth above upon property intended for ultimate sale or lease" followed the word "requisites." The deletion of this language from the second paragraph of section 1752(9–B) by P.L.1987, ch. 497, § 19 (effective Sept. 29, 1987) has no effect on the issues before us.

6. Section 112(1) provides in pertinent part: "The State Tax Assessor shall administer and enforce the tax laws enacted under ... Title [36] ..., and may adopt rules...."

argument is misplaced. In *UAH–Hydro*, the issue before us was whether bascule gates attached to a dam at the Winslow hydroelectric facility of the plaintiff were entitled to an exemption from a use tax pursuant to 36 M.R.S.A. § 1760(31). The Assessor found the gates were "real estate used in the storage of water, not machinery and equipment used in the production of electricity" and denied the exemption. We vacated the judgment entered in the Superior Court affirming the Assessor's decision. We noted that it was undisputed that the gates were machinery and/or equipment and that they were used exclusively to maintain the appropriate head pond elevation. No water was kept, retained or even slowed by the dam and gates; rather, they operated as a funnel to channel the water through the turbines for the production of electricity. We concluded that contrary to the Assessor's finding, there was nothing in the plain language of section 1760(31) that precluded fixtures from exemption. We determined that the function of the gates to maintain the appropriate head pond level was directly related to and primarily used in the production of tangible personal property and, accordingly, fell squarely within the statutory definition of production set forth in section 1752(9–B) as amplified by 08–125 C.M.R. 303–01(A). *Id.* at 868.

In the instant case, the equipment at issue is used solely for the purpose of maintaining the original firmness of the fish while being transported. The process effected by the equipment does not "transform[ ] or convert[ ] [the fish] by physical, chemical or other means into a different form, composition or character from which it originally existed." 36 M.R.S.A. § 1752(9–B). Accordingly, unlike in *UAH–Hydro,* here the equipment's use was "simply incidental [or] convenient . . . to production" and not an "integral and essential part of production."

To meet its burden of proof that the icing equipment is exempt from taxation, the Company had to establish that the equipment was used by it "directly" and "primarily" in the "production" of tangible personal property as those terms are statutorily defined. On this record and given the deference accorded to the Assessor's determinations, the trial court

properly concluded that the Assessor rationally could have determined that the Company failed to establish that its icing equipment qualified for tax exemption pursuant to 39 M.R.S.A. § 1760(31).

The entry is:

Judgment affirmed.

WATHEN, C.J., and ROBERTS and RUDMAN, JJ., concurring.

LIPEZ, Justice, dissenting, with whom CLIFFORD, J., joins.

I must respectfully dissent. Even under the deferential standard of *Jackson Advertising Corp. v. State Tax Assessor,* 551 A.2d 1365 (Me.1988), the Assessor could not have concluded rationally that SST & S failed to establish that its icing equipment is exempt from taxation.

Because the Assessor concedes that "the legislature did not mandate that each item . . . of machinery and equipment actually transform or convert raw materials" in order for the machinery and equipment to qualify for exemption pursuant to 36 M.R.S.A. § 1760(31), the narrow question presented by this appeal is whether the Assessor could have rationally concluded that SST & S had failed to establish that its ice-making equipment and totes were used "directly" in "an operation or integrated series of operations . . . which transforms or converts personal property . . . into a different form, composition or character." *See* 36 M.R.S.A. §§ 1760(31) (defining exempt machinery); 36 M.R.S.A. § 1752(9–B) (defining production). The word "directly" in section 1760(31) "refers to those activities or operations which constitute an *integral and essential* part of production . . ." 36 M.R.S.A. § 1752(2–A) (emphasis added).

SST & S established that the automated grading and cutting equipment used by it is ineffective if the flesh of the herring is not firm enough to permit processing by the equipment. The ice plant and related machinery and equipment lower the temperature of the herring to ensure the necessary firmness. The insulated totes maintain the necessary temperature during the brief time between landing of the fish and processing

with automated equipment. Failure to use the ice-making equipment would seriously impair the efficiency of the cutting and grading equipment. The icing equipment is indispensable to an integrated series of operations which transform or convert personal property into a different form. The fact that no specific transformation occurs as a result of the icing process itself, or that the icing occurs while the herring is being transported from Lubec to the production site in Prospect Harbor, is irrelevant.

If a particular operation, *i.e.*, icing the fish, is part of a larger, integrated series of operations, *i.e.*, processing the fish, that particular operation is included within the meaning of production. As acknowledged at oral argument, the Assessor, along with exempting the cutting and grading equipment, exempted other equipment that worked in tandem with the cutting and grading equipment to produce the canned herring. The exempted equipment included forklifts that transported the fish at the production plant, hoppers that stored the fish awaiting production, and a conveyor system that moved the fish through the production process. The non-exempted icing equipment is indistinguishable from and as much a part of an integrated series of operations as this other equipment exempted by the Assessor. The disputed items operated in combination with admittedly exempt machinery to make an integrated system. The exemption from tax should have been extended to those items, and the Assessor could not have rationally found otherwise.

Moreover, the Assessor's contention that the use of the ice-making equipment is "simply incidental, convenient or remote to production," 36 M.R.S.A. § 1752(2–A), does not comport with the reality of the process involved. The Assessor contends that if the fish were brought to the cutting and grading equipment shortly after being caught, they could be cut without prior icing and, there-fore, the icing process is merely a "convenience" that facilitates SST & S's processing of the herring at one central processing plant located at Prospect Harbor rather than at Lubec. The record reflects, however, that "it's not possible for [SST & S] to instantaneously ... process all fish." Even if SST & S's canning plant were located at Lubec, there would necessarily be a "holding period" during which temperature conditions would have to be maintained.

Although the Assessor insists that the State is not applying a locational test pursuant to rule 08–125 C.M.R. 303.01 [1] to deny SST & S an exemption, the Assessor's position belies that contention. Citing Rule 303.01(A), the Assessor contends that its determination should be upheld because the slush from the icing system is used "prior to the start of the fish processing operation" to facilitate the transportation of the fish to the production site, rather than being used directly in production. Thus, when compared with other pieces of equipment exempted by the Assessor, the disqualifying feature of the ice-making equipment and the slurry totes appears to be that they are not at the location of the first production machine. The fact that the ice-making equipment is located at some distance from the processing plant, however, does not diminish the "integral and essential part" that this equipment serves in the overall production process. 36 M.R.S.A. § 1752(2–A). Nor does the occurrence of this indispensable icing process during the transport of the herring from Lubec to the production site in Prospect Harbor alter the fact that the icing equipment is used, in the language of section 1760(31), "directly and primarily" in the cutting and grading of the herring. The Assessor's attempt to use his regulatory definition of production to divide the production process into discrete stages overlooks the possibility that aspects of production may occur away from the first production site and even during transportation.

1. The Maine Bureau of Taxation Rule 303.01 defines production as follows:

   "Production" referred to in § 1752(9–B) commences with the movement of raw materials to the first production machine after their receipt and storage at production site (after receipt if the raw materials are not stored) and ends with the completion of the finished product, including any packaging operation. The acquisition of raw materials, the transportation of raw materials or goods in process between production sites, and administrative and distributive operations do not constitute production.

   Me.Bur. of Tax.Rule 303.01 (June 1, 1951).

The Assessor's construction is an impermissible gloss on a statutory definition of production that by its terms describes a concept of production involving an integrated series of operations. To the extent that the Assessor's administrative interpretation of production is inconsistent with the plain meaning of the statute, this Court should accord no deference to that interpretation. *Scott Paper Co. v. State Tax Assessor,* 610 A.2d 275, 277 (Me.1992).

I conclude on this record that the assessor was compelled to find that SST & S's icing equipment was used "directly and primarily ... in production" of the processed herring, and, therefore, that the equipment is not taxable.