# HAROLD MacQUINN, INCORPORATED

### v.

## R. L. HALPERIN, in his capacity as State Tax Assessor of the Bureau of Taxation.

Supreme Judicial Court of Maine.

Argued Jan. 4, 1980.

Decided June 11, 1980.

Rudman, Winchell, Carter & Buckley, Clark P. Thompson (orally), Bangor, for plaintiff.

Jerome S. Matus (orally), Asst. Atty. Gen., Bureau of Taxation, Augusta, for defendant.

Before WERNICK, GODFREY and GLASSMAN, JJ. and DUFRESNE, A. R. J.

GODFREY, Justice.

This is an appeal from a judgment of the Superior Court, Hancock County, which upheld a decision of the State Tax Assessor, defendant R. L. Halperin, making a deficiency assessment against appellant, Harold MacQuinn, Inc., for a use tax under 36 M.R.S.A. § 1861 (1978). We affirm the judgment.

The appeal was brought on a stipulation of facts, which can be summarized briefly, as follows: On June 20, 1977, appellant corporation purchased a portable asphalt-mixing plant from Stansteel Corporation of California, with certain accessory equipment from other companies, at a total cost of $516,142.89. The portable plant was used in the production of bituminous concrete, or "hot mix". The portable plant was first put into service at Hancock, Maine, and used by Ronald P. MacQuinn, Inc., a different corporation, not owned by Harold MacQuinn, the owner of appellant corporation. During the period from July 28, 1977, to August 8, 1977, hot mix produced from the portable plant was sold by Ronald P. MacQuinn, Inc., to Harold MacQuinn, Inc., for resale by the latter, with the exception of sales by Ronald P. MacQuinn, Inc., directly to two other customers.

Sometime in August, 1977, the portable plant was moved to Blue Hill, Maine, and used by Harold MacQuinn, Inc., until September 28, 1977, when it was returned to Hancock. From October, 1977, to Novem-

ber, 1977, the hot mix produced from the portable plant was again sold by Ronald P. MacQuinn, Inc., to Harold MacQuinn, Inc., for resale by the latter. During the year 1978, all use of the portable plant was by Ronald P. MacQuinn, Inc.

MacQuinn argues that the mixer is exempted from the use tax by 36 M.R.S.A. § 1760(31) (1978), which exempts from sales and use tax

[s]ales of new machinery and equipment for use by the purchaser directly and primarily in the production of tangible personal property, which property is intended to be sold or leased ultimately for final use or consumption.

This statute must be read in the light of the following provisions of 36 M.R.S.A. § 1752 (1978), defining terms used throughout the Maine legislation governing sales and use taxes:

2–A. *Directly.* 'Directly,' when used in relation to production of tangible personal property, refers to those activities or operations which constitute an integral and essential part of production, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to production.

9–A. *Primarily.* 'Primarily,' when used in relation to production of tangible personal property means the use of a unit of property more than 50% of the time directly in production.

21. *Use.* 'Use' includes the exercise in this State of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale, including the derivation of income, whether received in money or in the form of other benefits, by a lessor from the rental of tangible personal property located in this State.[1]

The Superior Court held that the Assessor had correctly ruled that lending the mixer to another company was "use" under the definition in § 1752(21) but was not "use by the purchaser directly and primarily in the production of tangible personal property," for the purpose of exemption under § 1760(31). In its opinion, the Superior Court stated:

Read together, the statutes clearly indicate an intent that where a purchaser uses new equipment for more than one purpose, he may obtain a tax exemption only if he uses it more than 50% of the time for the single purpose of producing tangible personal property for resale. In the present case, plaintiff used the mixer for production purposes for only one out of four months; the rest of this time, plaintiff used the mixer for the purpose of loaning it out for use by others.[2]

Appellant contends that the Superior Court erroneously construed the phrase "for use by the purchaser directly and primarily in the production of tangible personal property" in subsection 31 of section 1760. Appellant argues that "directly and primarily" in this phrase does not mean "for use directly and primarily by the purchaser" but means only that the use must be "directly and primarily in the production of tangible personal property." If the other language of subsection 31 is disregarded, the word "use" encompasses a loan of the equipment in view of the statutory definition of "use" in § 1752(21), set forth above. If we assume, *arguendo,* that appellant's explanation of "directly and primarily" is correct, we must nevertheless determine whether a loan of the equipment by the purchaser for use by the borrower in the production of tangible personal property is to be con-

---

**1.** Section 1752 also includes definitions of "new machinery and equipment" (subsec. 7–B), "production" (subsec. 9–B), and "tangible personal property" (subsec. 17).

**2.** The Superior Court also ruled as follows:
The statute is ambiguous regarding the base period to be used by the State Tax Assessor in determining whether a purchaser is using new equipment for production pur-

poses 'more than 50% of the time'. Plaintiff, however, has not argued that the Court should consider the nature of its use of the mixer for any period beyond the four months that have been discussed. (July 28 to November 21, 1977).

Appellant has not challenged this ruling on appeal.

sidered a "use by the purchaser . . . in the production of tangible personal property . . . ." In effect, this is the interpretation advocated by appellant.

The Assessor observes that the words "by the purchaser" were not included in the initial draft of the bill which became § 1760(31) and argues that the insertion of "by the purchaser" was intended to exclude from exemption any machinery which is leased or lent for more than 50 percent of the time even though the lessee's or borrower's use would otherwise qualify for exemption. In effect, the Assessor argues that the statute has the same meaning as if it read: "for use . . . in production by the purchaser . . . ." The Bureau of Taxation has officially adopted that construction in subsection (1)(a) of Regulation No. 3 of its sales tax regulations.[3]

It is the Assessor's position that subsection 31 of section 1760 is unambiguous and should be interpreted according to its plain meaning; i. e., that "use by the purchaser . . . in the production" has essentially the same meaning as "use in production by the purchaser." We think the matter is not that simple for two reasons. First, "use", as the term is employed throughout the sales and use tax law, includes leasing as a form of exercising a "right or power . . . incident to . . . ownership." 39 M.R. S.A. § 1752(21), quoted above. It is certainly arguable that lending, like leasing, is a form of exercising a right or power incident to ownership. It is not absurd to suggest that if lending qualifies as a kind of "use" that is subject to use taxation, it qualifies also as a use within the scope of the exemption provisions.

Second, the general purpose of the exemption afforded by section 1760(31) is to encourage manufacturers in Maine to re-equip, modernize and expand their plants. At least a priori, that purpose would seem to be equally well served whether the purchaser employs the equipment himself in

the manner prescribed for the exemption or lends it to a bailee who employs it in the same manner.

In view of the possibility, suggested by the foregoing considerations, that the Assessor's interpretation may run counter to the basic purpose of the exemption, it is not appropriate for us to dispose of the case, as the Assessor suggests, by resort to the "plain-meaning" rule applicable to unambiguous language. However, certain other considerations lead us to conclude that the exemption was properly denied.

■ We begin with the general principle, well established in Maine law, that an exemption from taxation, while entitled to reasonable interpretation in accordance with its purpose, is not to be extended by application to situations not clearly coming within the scope of the exemption provisions. *Pentecostal Assembly of Bangor v. Maidlow*, Me., 414 A.2d 891 (1980); *Nature Conservancy v. Town of Bristol*, Me., 385 A.2d 39, 42 (1978); *Hurricane Island Outward Bound v. Town of Vinalhaven*, Me., 372 A.2d 1043, 1046 (1977); *Howard D. Johnson Co. v. King*, Me., 351 A.2d 524, 532 (1976). Technically speaking, the appellant is asking for an extension of the meaning of the words "use by the purchaser . . . in the production . . . ." to include "loan by the purchaser to a bailee for use by the bailee . . . in the production . . . ." Appellant has therefore the burden of showing that the purpose of the exemption clearly supports this extension of the statutory meaning. From the face of the statute, it is not apparent that its purpose is so clear, even if the entire context of the sales and use tax legislation is taken into account. Furthermore, examination of the history of section 1760 and cognate provisions makes it clear that the legislature has been at some pains to keep a tight rein on the exemption afforded by that section.

**3.** Regulation 3(1)(a) provides, in part, as follows:

. . . Consequently the exemption will not apply . . . to sales or [sic] machin-

ery or equipment to a purchaser who is a lessor rather than one who is himself going to use it in the production of tangible personal property for sale or lease. . . .

■ The sales and use tax law was first enacted by chapter 250 of the Public Laws of 1951. The use tax provision, which is now 36 M.R.S.A. § 1861 (1978), imposed a tax at the same rate as the sales tax on the storage, use or other consumption in Maine of tangible personal property purchased at retail sale. The purpose of the use tax is to minimize unfair competition between intrastate and interstate sales of tangible personal property. *Bangor-Hydro Elec. Co. v. Johnson*, Me., 226 A.2d 371, 379 (1967). Before passing the original bill, the legislature considered and rejected a proposal for an exemption of industrial machinery. 1951 Me.Leg.Rec. 1074.

In 1973, the legislature amended the sales and use tax by adding subsection 31 to section 1760, thereby exempting certain sales of new machinery and equipment. P.L.1973, ch. 580, § 1. The legislative record includes a statement by Senator Wyman that the amendment was intended to be "an inducement to our manufacturers to bring new machinery into Maine and make the climate more favorable for business." 1973 Me.Leg.Rec. 3156 (May 22, 1973). The words "by the purchaser", not included in subsection 31 in the original bill, were inserted in the course of enactment. A natural inference from that insertion is that the exemption was not intended to be available if the "use" of the machinery or equipment was by someone other than the purchaser himself, and it is doubtful, to say the least, that the insertion was made with intent to incorporate the particular subtlety that appellant now urges upon us; namely, that "use" included loan of the machinery to a bailee for the bailee's use in production.

In 1974, subsection 31 was amended by the addition of the words "or leased", so that it read:

. . . in the production of tangible personal property, which property is intended to be sold or leased . . . . P.L.1973, ch. 794.

That amendment was the final result of an effort by some members of the legislature to make a much broader addition to the exemption. The amendment as originally introduced would have extended the exemption to old as well as new machinery and to parts and packaging for products. The purpose was "to encourage Maine industry to re-equip, modernize, and expand to provide more and better employment opportunities for Maine people." Remarks of Senator Richardson, 1974 Me.Leg.Rec. 831 (February 19, 1974). The proposed amendment was narrowed drastically because the legislature thought the state could not afford the projected loss in revenue. 1974 Me.Leg. Rec. 2511, 2546–48 (March 29, 1974). The amendment actually enacted—broadening the exemption to include machinery used in the production of goods for leasing as well as for sale—has significance for the present case: it suggests that when the legislature wanted the exemption in subsection 31 broadened to include a type of transaction involving bailment it knew how to do so with explicit and appropriate language.

In 1977, the exemption was amended again. The principal change was the addition of a new definition of "production", subsection 9–B of § 1752.[4] P.L.1977, ch. 477, § 8. The definition was thought to be needed because of disputes that had arisen over the applicability of the exemption in subsection 31 of section 1760 to equipment

---

4. Subsection 9–B of section 1752 provides as follows:

9–B. Production. "Production" means an operation or integrated series of operations engaged in as a business or segment of a business which *transforms* or *converts* personal property, by physical, chemical or other means into a different form, composition or character from that in which it originally existed.

Production includes manufacturing, processing, assembling and fabricating opera-

tions which meet the definitional requisites set forth above upon property intended for ultimate sale or lease.

Production does not include biological processes, wood harvesting operations, the severance from sand, gravel, oil, gas or other natural resources produced or severed from the soil or water, or activities such as cooking or preparing drinks, meals, food or food products by a retailer for retail sale. The foregoing are examples of activities that are not included within the term "production."

used in the harvesting of biological raw materials, *e. g.*, trees for paper mills. Remarks of Representative Post, 1977 Me.Leg. Rec. 1944 (June 23, 1977). The amendment, as adopted, further limited the availability of the exemption in subsection 31 by narrowing, in effect, the definition of "production".

Thus, throughout the history of the new-machinery exemption, the legislature has repeatedly qualified and limited its commitment to the announced purpose of the exemption, of encouraging the expansion and modernization of equipment in Maine industries. Although appellant's purchase of the new portable mixer was certainly a purchase of new industrial equipment for production of tangible personal property, we are not persuaded that the use of that equipment for production by the appellant's bailee was "use by the purchaser" within the scope of an exemption that the legislature has left carefully circumscribed despite efforts to broaden it. In short, the legislative history tends strongly to confirm the correctness of applying the usual rule of reasonably strict construction to this particular exemption.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.