**Carl H. ROBBINS, et al.**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 1988.

Decided Feb. 5, 1988.

Alton C. Stevens (orally), Marden, Dubord, Bernier & Stevens, Waterville, for plaintiffs.

James E. Tierney, Atty. Gen., Clifford B. Olson (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

On this consolidated action, plaintiffs Carl H. Robbins and Ronald Colwell appeal from a summary judgment of the Superior Court (Kennebec County) upholding a separate use tax assessment against each plaintiff. On appeal plaintiffs contend that the Superior Court erred in failing to find their property exempt on the basis of its use in interstate commerce. We find no error and we affirm the judgment of the Superior Court.

I.

The relevant facts may be summarized as follows: Plaintiff Robbins purchased a Budd trailer on October 10, 1980, and a Fruehauf trailer on June 3, 1981. Robbins paid neither sales tax nor use tax on the purchases, claiming an exemption under 36 M.R.S.A. § 1760(41) (Supp.1987), which provision essentially exempts from tax the sale of a vehicle placed in use by the purchaser as an instrumentality of interstate commerce. After the purchase, Robbins, who was not licensed by the Interstate Commerce Commission (ICC) as a common or contract carrier, entered into agreements labelled "trip leases" and "lease

agreements" with carriers who were licensed by the ICC. The agreements provided that Robbins as lessor would lease to the lessee certain motor vehicles in exchange for payment. Similarly, plaintiff Colwell purchased a 1979 Mack tractor on March 26, 1982. Colwell did not pay any sales or use tax on the tractor claiming exemption under 36 M.R.S.A. § 1760(41). Colwell, also was not licensed by the ICC and entered into agreements with licensed carriers to lease the Mack tractor in exchange for payment.

The State Tax Assessor assessed both plaintiffs with use tax on their respective vehicles. Both plaintiffs appealed the decision to the Superior Court pursuant to 5 M.R.S.A. § 11002 (1979). The Superior Court granted the State's motion for summary judgment finding no genuine issue of fact and ruling that the State Tax Assessor correctly assessed a use tax against both plaintiffs.

## II.

The tax involved in this case was assessed pursuant to 36 M.R.S.A. § 1861 (1978), *amended by* P.L.1985, ch. 783, § 7; P.L.1987, ch. 497, § 41, which imposes a tax "on the storage, use or other consumption in this State of tangible personal property ...." The "use" subject to taxation is defined in 36 M.R.S.A. § 1752(21) (1978) as follows:

> the exercise in this State of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale, *including the derivation of income, whether received in money or in the form of other benefits, by a lessor from the rental of tangible personal property located in this State.*

(emphasis added). Plaintiffs do not disagree that leasing their vehicles to another constitutes a "use" of the vehicles, but rather they claim that their "use" is exempt under the following provisions of 36 M.R.S.A. § 1760(41) (Supp.1987):

> No tax on sales, storage or use shall be collected upon or in connection with:
>
> .     .     .     .     .

41. Certain instrumentalities of interstate or foreign commerce. The sale of a vehicle, railroad rolling stock, aircraft or watercraft which is placed in *use by the purchaser as an instrumentality of interstate or foreign commerce* within 30 days after that sale and which is used by the purchaser not less than 80% of the time for the next 2 years as an instrumentality of interstate or foreign commerce. The State Tax Assessor may for good cause extend for not more than 60 days the time for placing the instrumentality in use in interstate or foreign commerce. For purposes of this subsection, property is "placed in use as an instrumentality of interstate or foreign commerce" by its carrying of, or providing the motive power for the carrying of, a bona fide payload in interstate or foreign commerce, or by being dispatched to a specific location at which it will be loaded upon arrival with, or will be used as motive power for the carrying of, a payload in interstate or foreign commerce. For purposes of this subsection, "bona fide payload" means a cargo of persons or property transported by a contract or common carrier for compensation which exceeds the direct cost of carrying that cargo or pursuant to a legal obligation to provide service as a public utility or a cargo of property transported in the reasonable conduct of the purchaser's own nontransportation business in interstate commerce.

(emphasis added).

We begin by noting the well-established principle "that an exemption from taxation, while entitled to reasonable interpretation in accordance with its purpose, is not to be extended by application to situations not clearly coming within the scope of the exemption provisions." *Harold MacQuinn, Inc. v. Halperin,* 415 A.2d 818, 820 (Me. 1980). We also recognize "that the construction of a statute utilized by those whose duty it is to make the statute operative is entitled to great deference by a court when called upon to construe the statute." *Kelley v. Halperin,* 390 A.2d 1078, 1080 (Me.1978). Contemporaneously

with the enactment of section 1760(41), the State Tax Assessor promulgated the following interpretative ruling: "Personal property is not 'used as an instrumentality of interstate or foreign commerce' by a person who leases that property to another person who, in turn, uses that property as an instrumentality of interstate or foreign commerce." Me. Bureau of Taxation, Sales Tax Section Rule 08–125 CMR 318.01 (July 11, 1980, amended July 12, 1982). Unless there is something "in the language of [the statute] ... which makes the interpretation given by the State Tax Assessor contrary to expressed legislative purpose, it is entirely appropriate to look to its contemporaneous construction by the defendant as a guide." *Kelley*, 390 A.2d at 1080.

■ We have not previously interpreted the phrase "use by the purchaser as an instrumentality of interstate or foreign commerce" found in section 1760(41). We have, however, interpreted a similar exemption provision in connection with production machinery. In *Harold MacQuinn, Inc. v. Halperin*, 415 A.2d 818, 819 (Me.1980), we held that the State Tax Assessor had correctly ruled that, although lending an asphalt mixer to another company was a taxable "use" under the definition in § 1752(21), it was not "use by the purchaser directly and primarily in the production of tangible property," for the purpose of exemption under § 1760(31). In *MacQuinn*, we rejected an application of the exemption to the effect that "use included loan of the machinery to a bailee for the bailee's use in production." *Id.* at 821. Similarly, in the present case, we decline to extend the exemption to include lease of the vehicles to a lessee for the lessee's use in interstate commerce.

### III.

■ Finally, plaintiffs argue that even though the Assessor's interpretation of the exemption may be correct, the Superior Court erred in granting summary judgment. Plaintiffs assert that a genuine issue of fact remains whether the "trip leases" constituted a lease of the vehicles or, conversely, a rental of the ICC permit be-longing to another. In this case, the agreements between plaintiffs and the various ICC-licensed carriers were in writing. Plaintiffs admitted that the copies of the agreements before the Superior Court were true and accurate and that the tractor and trailers in question carried commodities pursuant to similar agreements.

In interpreting a contract, we recognize the principle that "the intention of the parties should be determined, if possible, from the language of the instrument, viewed in the light of the circumstances under which it was made unless a rule of law or policy forbids." *Bank of Maine v. Giguere*, 309 A.2d 114, 117 (Me.1973). The agreements involved in this case provide for the lease of certain motor vehicle equipment with exclusive possession, control, use and responsibility resting in the lessee. In return lessee agrees to pay compensation for the use of the motor vehicle.

The Superior Court did not err in holding as a matter of law that leases existed for the derivation of income from the rental of the vehicles and that the State Tax Assessor correctly assessed use tax against plaintiffs.

The entry is:

Judgment affirmed.

All concurring.