**RICHARD & BETTY LANGLEY, INC.**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued May 5, 1988.

Decided May 31, 1988.

Richard Salewski, Portland, for plaintiff.

Clifford B. Olson (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

GLASSMAN, Justice.

The defendant, State Tax Assessor (Assessor), appeals from a judgment of the Superior Court, Cumberland County, for the plaintiff, Richard C. and Betty Langley, Inc. (Langley), contending that the court erred as a matter of law in holding that the provisions of 36 M.R.S.A. § 1760(41) (Supp. 1987) exempted Langley from the payment of a use tax on a tractor purchased by Langley. We hold that the Assessor correctly assessed a use tax against Langley and vacate the judgment.

I

The relevant facts may be summarized as follows: Langley purchased an International Harvester tractor in Maine on November 5, 1981. Langley did not pay a sales or use tax on the tractor. Langley did not have a contract or common carrier license with the Interstate Commerce Commission (I.C.C.) to operate a tractor in interstate commerce. Langley entered into a "transportation service agreement" with Nelson Freightways (Nelson), an I.C.C. licensed carrier, to operate the tractor under the I.C.C. authority of Nelson. The tractor was utilized in this manner until December, 1982, when it was destroyed in an accident. The agreement between Langley and Nelson provided, *inter alia*, that Langley would be responsible for driving the tractor, maintaining and repairing it, selecting routes, carrying insurance, and paying for shortages and losses of cargo. The agreement also recited that Nelson's business was subject to regulation of the I.C.C. and Langley had the responsibility of satisfying these regulatory requirements. Nelson was to secure the jobs, provide trailers and dispatch the equipment. For the use of the equipment and the services to be performed by Langley under this agreement, Nelson agreed to pay Langley 65% of the revenues derived from the use of the tractor.

The Assessor taxed Langley with a use tax on the tractor. Langley appealed the Assessor's decision to the Superior Court pursuant to 5 M.R.S.A. § 11002 (1979). After hearing, the Superior Court found that

Langley "generally had complete control of and responsibility for the [tractor] in interstate commerce [and had] simply obtained an accommodation to allow them to operate the [tractor] in interstate commerce without the requisite [I.C.C.] permit." The court determined that under the provisions of 36 M.R.S.A. § 1760(41) Langley was exempted from the payment of the use tax, and the Assessor appealed.

II

The Assessor argues that the facts of this case are indistinguishable from those in *Robbins v. State Tax Assessor*, 536 A.2d 1127 (Me.1988), and accordingly, the state use tax was properly imposed pursuant to 36 M.R.S.A. §§ 1861 (1978) and 1752(21) (1978).[1] Langley contends that, unlike the agreement in *Robbins*, its agreement with Nelson establishes that Langley placed the tractor in use in interstate commerce, where it remained 100% of the time until its destruction. Therefore, Langley argues, the exemption to the use tax set forth in 36 M.R.S.A. § 1760(41)[2] is applicable.

In *Robbins v. State Tax Assessor*, 536 A.2d at 1129, we for the first time interpreted the phrase "use by the purchaser as an instrumentality of interstate or foreign commerce" found in section 1760(41) and refused to extend the tax exemption to an owner who had leased equipment to a les-

see for the lessee's use in interstate commerce.

At the time Langley and Nelson entered into their agreement, I.C.C. regulations provided that an "authorized carrier may perform authorized transportation in equipment it does not own only ... [by] a written lease granting the use of the equipment and meeting the requirements contained in § 1057.12." 49 CFR § 1057.11(a). 49 CFR § 1057.12 provides in pertinent part:

(c) The period for which the lease applies shall be for 30 days or more when the equipment is to be operated for the authorized carrier by the owner or an employee of the owner.

(d)(1) The lease shall provide that the authorized carrier lessee shall have the exclusive possession, control, and use of the equipment for the duration of the lease....

The agreement between the parties specifically provided that Langley would furnish Nelson "the possession, control and use" of the [tractor] to "fulfill requirements placed on [Nelson] by all applicable [I.C.C.] regulations," and do "all other things necessary to conduct the transportation services provided in this Agreement in accord with all applicable [I.C.C.] regulations." Thus, the agreement of the parties required Langley to provide Nelson with the exclusive possession, control and use of the tractor as required by the I.C.C. regulations. In return, Nelson agreed to pay

---

**1.** 36 M.R.S.A. § 1861 provides in pertinent part:
A tax is imposed on the ... use ... in this State of tangible personal property, purchased at retail sale.... Every person so ... using ... is liable for the tax until he has paid the same....
36 M.R.S.A. § 1752(21) defines use as:
"Use" includes the exercise in this State of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale, including the derivation of income, whether received in money or in the form of benefits, by a lessor from the rental of tangible personal property located in this State.

**2.** In 1981, at the time Langley purchased the tractor, 36 M.R.S.A. § 1760(41) provided in pertinent part:
No tax on ... use shall be collected upon or in connection with:

... The sale of a vehicle ... which is placed in use by the purchaser as an instrumentality of interstate or foreign commerce within 10 days after that sale and which is used by the purchaser not less than 80% of the time for the next 2 years as an instrumentality of interstate or foreign commerce. For purposes of this subsection, property is "placed in use as an instrumentality of interstate or foreign commerce" by its carrying of, or providing the motive power for the carrying of, a bona fide payload in interstate or foreign commerce, or by being dispatched to a specific location at which it will be loaded upon arrival with, or will be used as motive power for the carrying of, a payload in interstate or foreign commerce. For purposes of this subsection, "bona fide payload" means a cargo of persons or property transported by a contract or common carrier for compensation....

Langley compensation for the use of the tractor. It was Nelson, not Langley, that "placed" the tractor in "use" as "an instrumentality of interstate commerce." *See Robbins,* 536 A.2d at 1129. Accordingly, the Superior Court erred in holding that the provisions of 36 M.R.S.A. § 1760(41) exempted Langley from paying the use tax on the tractor.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment affirming the decision of the State Tax Assessor.

All concurring.