2001 ME 95

**J & E AIR, INC.**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued: April 10, 2001.
Decided: June 22, 2001.

Brendan P. Reilly, Esq., (orally), Frank H. Frye, Esq., Jensen Baird Gardner & Henry, Portland, for Plaintiff.

G. Steven Rowe, Attorney General, Stanley W. Piecuch, Asst. Attorney General, (orally), Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] J & E Air, Inc. appeals from the summary judgment entered in the Superior Court (Kennebec County, *Marden, J.*) in favor of the State Tax Assessor. J & E contends that the Superior Court erred in its interpretation of 36 M.R.S.A. § 1760(41) (Supp.2000) and in affirming the assessment of a use tax arising out of its purchase of an aircraft subsequently used in interstate commerce.[1] We disagree and affirm the judgment.

[¶ 2] In 1996, J & E, a Maine corporation, purchased a 1980 Hawker Siddley aircraft out of state and brought it to Maine. Contemporaneously with its purchase of the aircraft, J & E entered into a management agreement with Telford Avia-

---

1. No tax on sales may be collected upon or in connection with:

The sale of a[n] ... aircraft ... that is placed in use by the purchaser as an instrumentality of interstate or foreign commerce within 30 days after that sale and that is used by the purchaser not less than 80% of the time for the next 2 years as an instrumentality of interstate or foreign commerce ....

36 M.R.S.A. § 1760(41) (Supp.2000).

tion. Pursuant to the agreement, Telford managed the aircraft in exchange for a monthly management fee of $12,400. The management services included the furnishing of a hangar and the provision of general cleaning services, flight crews, crew training, and insurance.[2] Telford chartered the aircraft primarily for passengers and operated under its own FAA certificate.[3] Telford agreed to pay J & E half of the fee Telford charged for each chartered flight and billed J & E for Telford's maintenance costs. If J & E made use of the aircraft, J & E would be responsible to Telford for fuel and other costs and a $100 per hour flight management fee.

[¶ 3] J & E maintains that the intent of the agreement was to have J & E retain control over the business. Telford was to produce customers who would use the aircraft, manage the flights, and maintain the aircraft. The agreement also granted to the J & E owners and their designees priority on the use of the aircraft. For the first six months, Telford cleared all charter reservations with J & E, but this procedure was not required under the management agreement.

[¶ 4] J & E submitted an Affidavit of Exemption to the Bureau of Taxation, asserting that the aircraft was exempt from the sales and use tax imposed under 36 M.R.S.A. § 1861 (Supp.2000)[4] because it was used in interstate commerce pursuant to 36 M.R.S.A. § 1760(41). The Bureau nevertheless assessed a use tax along with interest and penalties against J & E in connection with the purchase of the aircraft. J & E then filed a petition for

reconsideration, *see* 36 M.R.S.A. § 151 (Supp.2000), but the Assessor denied the petition. The Assessor agreed that the aircraft was placed in use as an instrumentality of interstate commerce within thirty days, as required by section 1760(41), but concluded that because it was Telford, and not J & E, that placed the aircraft in interstate commerce, the exemption provision of 36 M.R.S.A. § 1760(41) did not apply.

[¶ 5] J & E filed a petition for review with the Superior Court, contending that the management agreement manifested an agency relationship, and that, under the language of the statute, J & E qualified for an exemption. The Superior Court affirmed the decision of the Assessor. The court relied on "use by the purchaser" language used in subsection 41 of 36 M.R.S.A. § 1760 to conclude that J & E, the purchaser, must be the entity actually using the aircraft in interstate commerce for the exemption to apply. J & E then filed this appeal.

▪ [¶ 6] Because the Superior Court's review of the decision of the Assessor is *de novo, see* 36 M.R.S.A. § 151 (Supp.2000), we review the Superior Court's interpretation directly for errors of law. *Stromberg–Carlson Corp. v. State Tax Assessor,* 2001 ME 11, ¶ 5, 765 A.2d 566, 567; *Foster v. State Tax Assessor,* 1998 ME 205, ¶ 7, 716 A.2d 1012, 1014; *L.L. Bean, Inc. v. State Tax Assessor,* 649 A.2d 331, 332 (Me.1994).

▪ [¶ 7] The State of Maine exempts from sales and use taxation certain tangible personal property placed in use by the purchaser as an instrumentality of inter-

---

**2.** Paragraph two of the agreement reads: "Telford Aviation, Inc. agrees to pay J & E Air, Inc. the sum of one thousand one hundred twenty-five dollars ($1,125.00) per chartered flight hour. Telford Aviation, Inc. will be responsible for all fuel and MSP on chartered flights."

**3.** J & E did not have an FAA certificate.

**4.** The State may impose a tax "on the storage, use or other consumption in this State of tangible personal property or a service, . . . ." 36 M.R.S.A. § 1861 (Supp.2000).

state or foreign commerce. 36 M.R.S.A. §§ 1752(21), 1760(41) (1990 & Supp.2000). Subsection 41 of 36 M.R.S.A. § 1760 allows such a tax exemption for aircraft and other vehicles. *See Comm. Amend.* A to L.D. 1918, No. H–911 (109th Legis.1980). The *use* subject to taxation is defined in 36 M.R.S.A. § 1752(21).[5] We must determine whether the use of J & E's aircraft constitutes "use by the purchaser" to exempt J & E from being assessed a sales tax on that aircraft. *See* 36 M.R.S.A. § 1760(41).

[¶ 8] We have refused to read 36 M.R.S.A. § 1760(41) to extend the tax exemption to an owner who purchased a truck and leased the equipment to a lessee, a third party who was a licensed carrier, for the lessee's use in interstate commerce in exchange for payment. *Robbins v. State Tax Assessor*, 536 A.2d 1127, 1128, 1129 (Me.1988). As in this case, where J & E does not have an FAA certificate, the owner in *Robbins* was not licensed as a common carrier. *Id.* at 1128. Similarly, we concluded that a purchaser of a tractor used in interstate commerce did not qualify for the exemption pursuant to subsection 41, because it was a carrier, and not the purchaser, that placed the tractor in use as an instrumentality of interstate commerce. *Richard & Betty Langley,*

*Inc. v. State Tax Assessor*, 542 A.2d 1, 2–3 (Me.1988) In that case, the agreement of the parties required the purchaser to provide the carrier with the exclusive possession, control and use of the tractor to "fulfill requirements placed on [the carrier] by all applicable [common carrier license] regulations," and the carrier agreed to compensate the purchaser with a percentage of the revenues derived from the use of the tractor. *Id.* at 1, 2–3.

[¶ 9] We also affirmed an assessment against a purchaser of equipment used by a bailee in the production of tangible personal property because it was not used by the purchaser pursuant to the exemption language in section 1760(31).[6] *Harold MacQuinn, Inc. v. Halperin*, 415 A.2d 818, 821, 822 (Me.1980). In that case, a corporation purchased a factory plant, which was put into its first use by a different corporation independent of the purchasing corporation. *Id.* at 818–19. We construed "use by the purchaser" in subsection 31 to mean that the exemption was not "intended to be available if the 'use' ... was by someone other than the purchaser." [7] *Id.* at 821.

■ [¶ 10] "[A]n exemption from taxation, while entitled to reasonable interpre-

---

5. "Use" for purposes of sales and use tax provisions is defined by:

[t]he exercise in this State of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale, including the derivation of income, whether received in money or in the form of other benefits, by a lessor from the rental of tangible personal property located in this State.

36 M.R.S.A. § 1752(21) (1990).

6. The statute provides for an exemption for the sales of machinery and equipment:

For use by the purchaser directly and primarily in either the production of tangible personal property intended to be sold or leased ultimately for final use or consumption, or in the production of tangible per-

sonal property pursuant to a contract with the United States Government or any agency thereof.

36 M.R.S.A. § 1760(31) (Supp.2000).

7. While the legislative history of subsection 31 addresses why the legislature inserted "by the purchaser" after "use" and the history of subsection 41 does not contain any such discussion, the fact that subsection 41 was enacted after subsection 31 suggests that "use by the purchaser" should be afforded the same interpretation for both subsections. *See Harold MacQuinn, Inc.*, 415 A.2d at 821 (refusing to extend phrase to include loan by purchaser of equipment to bailee for use by bailee).

tation in accordance with its purpose, is not to be extended by application to situations not clearly coming within the scope of the exemption provisions." *Harold MacQuinn,* 415 A.2d at 820; *see also Brent Leasing Co., Inc. v. State Tax Assessor,* 2001 ME 90, ¶¶ 12, 15, 773 A.2d 457 (reiterating narrow construction of tax exemptions).

[¶ 11] The "words, terms and phrases when used in [the Sales and Use Tax Law] have the meaning ascribed to them in this section, except where the context clearly indicates a different meaning." 36 M.R.S.A. § 1752 (Supp.2000). "Unless there is something 'in the language of [the statute] . . . which makes the interpretation given by the State Tax Assessor contrary to expressed legislative purpose, it is entirely appropriate to look to its contemporaneous construction by the [Assessor] as a guide.'" *Robbins,* 536 A.2d at 1129 (quoting *Kelley v. Halperin,* 390 A.2d 1078, 1080 (Me.1978)).

[¶ 12] Pursuant to 36 M.R.S.A. § 1760(41), the interstate commerce exemption is available only if the property is placed in use in interstate commerce by the *purchaser.*[8] Although J & E had priority to use the aircraft, even if other parties had already reserved it, the overwhelming use of the aircraft as an instrumentality in interstate commerce was by Telford. Telford did consult with J & E when booking the charters, but that practice was rarely exercised after the first six months, and was not set out clearly in the management agreement. Moreover, J & E does not dispute that it was Telford that dealt with the "minutiae of everyday maintenance and control." Accordingly, use of

the aircraft by J & E does not entitle J & E to the exemption.

[¶ 13] J & E also contends, however, that it is entitled to the exemption because Telford acted as its agent.[9] We look to J & E's contract with Telford to determine if an agency relationship was created. We view the language of a contract in the light of the circumstances under which it was made to determine the intention of the parties. *Robbins,* 536 A.2d at 1129.

[¶ 14] An agency is a fiduciary relationship "which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control and consent by the other so to act." *Perry v. H.O. Perry & Son Co.,* 1998 ME 131, ¶ 7, 711 A.2d 1303, 1305. An agency arises from an "agreement that one party will act on behalf of, and subject to the control of the other." *Page v. Boone's Transp., Ltd.,* 1998 ME 105, ¶ 5, 710 A.2d 256, 257. "It is the element of continuous subjection to the will of the principal which distinguishes the agent from other fiduciaries." *Id.* Consent and control are required elements. *Id.*

[¶ 15] Under the terms of the agreement, it was Telford, and not J & E, that was in control of the entire air operation during the aircraft's use in interstate commerce. Telford held the license to fly the aircraft and had the ultimate decisional authority. Telford also directed the booking of the chartered flights. The exemption is not triggered because J & E retained some control over the aircraft when it was on the ground, or because J & E could make some management decisions

---

8. Because we find that the plain language of the statute does not support a contrary reading, we do not need to refer to the legislative history.

9. The Superior Court did not determine whether an agency relationship existed between J & E and Telford.

regarding the aircraft. Telford was not subject to J & E's control when the aircraft was being used in interstate commerce, the very use required for the statutory exemption. The management agreement did not create a relationship between J & E and Telford that entitles J & E to the exemption it seeks.

The entry is:

Judgment affirmed. Remand to the Superior Court to order J & E Air to pay the assessment.