STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP 13-42

STATE TAX ASSESSOR,
    Petitioner

v.

DECISION

MCI COMMUNICATION
SERVICES, INC., et al.,
    Respondent

This matter is before the Court on countervailing motions for summary judgment by petitioner and respondent in the absence of genuine issues of material facts.

## I. Factual and Procedural Background.

Respondent MCI Communications Services, Inc. (MCI) is a telecommunications service provider who provides long distance telephone service in Maine and throughout the United States. Maine Revenue Services (MRS) audited MCI and determined that MCI should have paid service provider tax (SPT) on revenue from property tax recover charges (PTRC) and carrier cost recovery charges (CCRC). MRS made an assessment against MCI for service provider tax and interest for the period from March 1, 2008 to December 31, 2010.

MCI sought review of the Division Reconsideration Decision before the Maine Board of Tax Appeals (BOTA). After MCI and MRS filed memoranda and held an appeals conference before BOTA, BOTA concluded the CCRC and PTRC were not subject to the Maine service provider tax.

On November 6, 2013, the State Tax Assessor (Assessor), the director of MRS, petitioned this Court for judicial review of BOTA's decision.

MCI is a telecommunications service provider that provides long distance telephone service in Maine and throughout the United States. MCI does not provide local telephone service in Maine; an affiliated entity, MCImetro Access Transmission Services LLC, provides local telephone service in Maine.

If an MCI customer purchased interstate and international telecommunications services, MCI added two charges to the customer's bill: property tax recover charges (PTRC) and carrier cost recovery charges (CCRC). MCI recovers property taxes paid to state and local jurisdictions on real property and tangible personal property under PTRC. PTRC is a Federal Communications Commission (FCC) tariffed surcharge that is calculated as a percentage of charges

for interstate and international telecommunications services. MCI was not required to charge its customers the PTRC. PTRC cannot be purchased as a standalone item and will only appear on a customer's bill if the customer purchases interstate or international telecommunications services. There is no specific calculation performed for what portion of property on which property taxes are paid is attributable to interstate and international telecommunications services versus intrastate telecommunications services because the property is used for intrastate, interstate, and international telecommunications. MCI determines the rate of the PTRC surcharge by comparing the total property tax expenses to be recovered to the total eligible revenue (revenue from interstate and international telecommunications services as reported to the FCC on Form 499-A) against which the PTRC is to be recovered to derive the applicable percentage, with the intention of recovering only around 85% of the total property tax expenses paid.

MCI recovers a portion of expenses paid to the FCC and costs of administering FCC programs under the CCRC. CCRC is an FCC tariffed surcharge that (1) allows MCI to recover a portion of expenses MCI was required to pay to the FCC or to a third-party administrator appointed by the FCC to administer regulatory programs; and (2) that is calculated as a percentage of charges for interstate and international telecommunications services for large business (enterprise) customers. MCI was not required to charge CCRC to its customers. CCRC cannot be purchased as a standalone item and will only appear on a customer's bill if the customer purchases interstate or international telecommunications service. The expense recovered through the CCRC surcharge that were paid directly to the FCC are annual regulatory fees, which include interstate service provider regulatory fee—159-W invoice from the FCC; international bearer circuit fees; submarine cable fees; and earth station fees. The expense recovered through the CCRC surcharge that were paid to a third-party administrator include the North American Numbering Plan (NANP) administration fee for issuance and tracking of telephone numbers to carriers; federal telecommunications relay services (TRS) administration fees to fund the administration of services to the speech and hearing impaired; and federal local number portability (LNP) administrative fees for administering the local number portability database and tracking the porting of numbers between carriers. MCI determines the amount of CCRC surcharge by comparing the total FCC expenses to the total eligible revenue (revenue from interstate and international telecommunications services as reported to the FCC on Form 499-A) against which the CCRC is to be recovered to derive the applicable percentage.

On January 5, 2011, Maine Revenue Services (MRS) sent a standard Intent-to-Audit letter to MCI. MRS completed the audit and concluded that the only audit issues were the PTRC and the CCRC. MRS believed that MCI should have paid service provider tax on revenue received from PTRC and CCRC. MRS assessed the amount MCI owed as $140,815.13 in tax and $31,603.76 in interest, for a total amount due of $172,418.89.

2

MCI sought reconsideration of the assessment. The Audit Division of the MRS upheld the assessment and noted the accrual of additional interest as of the date of the Audit Division's reconsideration decision in the amount $12,454.80, for a total amount due of $184,873.69.

MRS made an assessment against MCI for service provider tax and interest for the period from March 1, 2008 to December 31, 2010. During this period, there were two versions of the service provider tax statute. The Maine Legislature amended the service provider tax statute under 36 M.R.S. §§ 2551-2560 in P.L. 2007, c. 627, which became effective on July 18, 2008. Consequently, two different versions of the service provider tax statute apply to different parts of the audit period: before July 18, 2008, and beginning on July 18, 2008.

## II. Discussion.

### A. Legal framework.

Prior to July 18, 2008, Maine imposed tax on the value of telecommunications services. 36 M.R.S. § 2552(1)(E)(2007). Telecommunications services included "[t]he provision of 2-way interactive communications through the use of telecommunications equipment ... [but] does not include: service originating or terminating outside this State ...." 36 M.R.S. § 2551(20)(2007). The value of telecommunications services "is measured by the sale price." 36 M.R.S. § 2552(2)(2007). "'Sale price' means the total amount of consideration, including cash, credit, property and services, for which personal property or services are sold, leased or rented, valued in money whether received in money or otherwise, without any deduction for the cost of materials used, labor or service costs, interested, losses and any other expense of the seller." 36 M.R.S. § 2551(15)(2007). "'Sale price' does not include ... [t]he amount of any tax imposed by the United States or the State on or with respect to the sale of a service, whether imposed upon the seller or the consumer." 36 M.R.S. § 2551(15)(2007).

The Maine Legislature changed the service provider tax law by enacting P.L. 2007, Chapter 627, "An Act Concerning Technical Changes to the Tax Laws," which took effect on July 18, 2008. As of July 18, 2008, the Legislature included the sales of interstate and international telecommunications services in the value of telecommunications, but exempted them from service provider tax. The Legislature repealed the definition of "telecommunications services" under 36 M.R.S. § 2551(20)(2007), *amended by* P.L. 2007, ch. 627, § 63 (effective July 18, 2008) and defined "telecommunications services" as "the electronic transmission, conveyance or routing of voice, data, audio, video or any other information or signals to a point or between or among points." 36 M.R.S. § 2551(20-A)(2007), *amended by* P.L. 2007, ch. 627, § 64 (effective July 18, 2008). The Legislature exempted sales of international telecommunications service and interstate telecommunications service from service provider tax. 36 M.R.S. §§ 2557(33), (34)(2007), *amended by* P.L. 2007, ch. 627, §§ 74, 75 (effective July 18, 2008). "International

telecommunications service" is "a telecommunications service that originates or terminates in the United States and terminates or originates outside the United States, respectively." 36 M.R.S. § 2551(5-A)(2007), *amended by* P.L. 2007, ch. 627, § 59 (effective July 18, 2008). "Interstate telecommunications service" is "a telecommunications service that originates in one state, territory or possession of the United States and terminates in a different state, territory or possession of the United States." 36 M.R.S. § 2551(5-B)(2007), *amended by* P.L. 2007, ch. 627, § 60 (effective July 18, 2008). The Legislature did not define "sales."

B. The Parties' arguments regarding the service provider tax statute effective on July 18, 2008.

1. *The Assessor's Motion for Summary Judgment, MCI's Opposition, and the Assessor's Reply.*

For the statute beginning on July 18, 2008, the Assessor's general argument is that the service provider tax applies to "sale price" of interstate and international telecommunications services, but the tax exemption applies to the "sales" of interstate and international telecommunications. The CCRC and PTRC are part of the sale price of interstate and international telecommunications services, so those charges are taxed. But the CCRC and PTRC are not part of sales, so they are not exempt from taxation.

The Assessor argued that CCRC and PTRC do not qualify for the exemption because they are charges imposed on MCI's customers to recover MCI's expenses. The Assessor argued the starting point for determining the sale price is the total amount charged to a customer in a sale of telecommunications services, then deduct from the total amount charged to the customer amounts attributable to items that § 2551 (15) or MRS practice excludes from the sale price. As a result, the Assessor is not pursuing the part of the CCRC that is attributable to federal telecommunications relay services (TRS), the TRS-portion of CCRC is excluded from the sale price of telecommunications. The remaining part of CCRC and the entire amount of PTRC are not excluded from the sale price by either statute or MRS policy; in other words, they are included in the sale price. Thus, the non-TRS-portion of CCRC and the entire portion of PTRC are part of sale price of telecommunications service and subject to service provider tax because they are expenses and the customer pays these charges.

In MCI's Opposition to the Assessor's Motion for Summary Judgment, MCI argued that CCRC and PTRC are exempt from taxation because they are part of the value of interstate and international telecommunications services, which is measured by sale price. MCI argued that because the definition of "sale price" applies to the entire chapter, the definition applies equally to the imposition of taxes and exemptions from taxes. And MRS has not identified any contextual or other basis for not applying the definition of "sale price" equally. MCI argued that "sales" must be measurable and the statute specifically measures the "value" of the services

4

by "sale price" under 36 M.R.S. § 2552(2). Consequently, "sales" are measured by "sale price" not only for purposes of taxation, but for purposes of exemption.

Additionally, MCI explained that it is not attempting to deduct any of its expense from its sales for purposes of computing the service provider tax. MCI explained that applying taxes based on the underlying expenses for each sale would force MCI to try to bifurcate revenue amounts or charges based on the underlying expenses and create a situation such as the one created by MRS whereby it declares a portion of the CCRC is not taxable to the extent it is recovering TRS charges. Following the MRS's argument to its logical conclusion, MCI argued that MRS would tax a charge for telephone service based on underlying salaries, buildings, equipment, trucks, tools, supplies, etc. And if a charge to recover an expense of the seller is not exempted, no exemptions would exist because everything MCI, or any provider, charges is in some way recovering its expenses.

In the Assessor's Reply, the Assessor agreed with MCI that the service provider tax is imposed on the value of applicable services sold in Maine, and the value is measured by the sale price of the services. But exemptions are not measured by the sale price. The statutory section on exemption is generally silent as to how to measure exemptions. In one instance, when the Legislature intended to measure an exemption from service provider tax by its sale price, it said so. Thus, the Assessor's interpretation of the statute gave full meaning to all of the words in the statute. And the Assessor's narrow interpretation of tax exemptions is consistent with relevant case law.

The Assessor argued that MCI ignored the actual language of the statute, "sales," in favor of what MCI preferred the statute to say by measuring the exemption for interstate and international service by the "sale price" of those services. The Assessor agreed with MCI that the service provider tax is imposed on the value of applicable services sold in Maine, and the value is measured by the sale price of the services. But exemptions are not measured by the sale price. The statutory section on exemption is generally silent as to how to measure exemptions. In one instance, when the Legislature intended to measure an exemption from service provider tax by its sale price, it said so. Thus, the Assessor's interpretation of the statute gave full meaning to all of the words in the statute. And the Assessor's narrow interpretation of tax exemptions is consistent with relevant case law.

The Assessor also argued PTRC and CCRC charges are not similar to charges, such as FUSF and MUSF, which MRS excludes from the sale price telecommunications services. MCI conceded that CCRC and PTRC are part of the sale price of telecommunications services, so unlike FUSF and MUSF charges, they are not excluded by statute or MRS interpretation. Second, CCRC and PTRC charges are unlike line item charges for FUSF, MUSF, and E911 that MRS excludes from the sale price. MRS excludes charges for FUSF, MUSF, and E911 from the sale price because these charges fund regulatory programs that benefit the public as a whole or specific underserved or disadvantaged populations. CCRC and PTRC are not used to

5

fund specific regulatory programs, but are expenses that MCI chooses to pass along to its customers. Finally, the Assessor argued that the Legislature did not intend to exempt charges used to recover some of a service provider's expenses when it created the exemptions for interstate and international telecommunications service.

2. *MCI's Motion for Summary Judgment, the Assessor's Opposition, and the MCI's Reply*.

MCI argued that the plain language of Maine statutes exempt the CCRC and PTRC surcharges. And the State's attempt to tax the CCRC and PTRC will lead to an illogical and inconsistent result.

MCI began its argument section by arguing that the CCRC and PTRC are surcharges on interstate and international telecommunications service and are exempt from the service provider tax. MCI argued that critical to this case is an understanding of "surcharge," which is used in the MRS's Instructional Bulletin #56, but is not defined. MCI defined "surcharge" using the plain meaning as "an additional amount paid for something; in this case, an additional amount paid for interstate or international telecommunications services." MCI argued that the CCRC and PTRC are surcharges added to customer invoices as a percentage of interstate and international services only if customer's purchase interstate or international telecommunications service. And the price a customer pays for interstate and international service is increased by the amount of the surcharge, which is not taxable.

MCI also argued that 36 M.R.S.A. § 2552(1) imposes the service provider tax on the "value of" "telecommunications services" sold in the State. Value is measured by the sale price under 36 M.R.S. § 2552(2). Because CCRC and PTRC are part of "value" of telecommunications services, they are part of the "sale price" of telecommunications services. Consequently, the CCRC and PTRC are exempt from taxation.

MCI noted that there is a broadly accepted principle that statutorily created exemptions from taxation must be strictly construed, but that does not require the narrowest possible meaning must be given to an exemption. MCI argued that the Law Court indicated that exemptions should be interpreted reasonably and not narrowly. And a reasonable interpretation of the statutes shows that the Legislature intended to include CCRC and PTRC in the exemption as part of the sales of interstate and international telecommunications.

In the Assessor's Opposition, the Assessor agreed with MCI that CCRC and PTRC are included in the sale price of telecommunications services, thus, the only issue is whether the CCRC and PTRC qualify for the exemptions under the sales of interstate telecommunications and international telecommunications services. The Assessor argued that MCI repeatedly misstates and misconstrues the language of the exemptions in this case. The Assessor stated that the exemptions apply to the "sale"

of interstate and international telecommunications service, and not the "sale price" of those services. The Assessor emphasized that the Legislature knew how to exempt the sale price of a particular service, and did not do so in the case of interstate or international telecommunications services.

In MCI's Reply, MCI explained that the question in this case is whether CCRC and PTRC surcharges are subject to the service provider tax and not whether CCRC and PTRC qualify for exemptions from taxation. MCI argued that the statute shows that the service provider tax applies to the "value" of listed services and "value" is expressly measured by "sale price." MCI argued that the exemptions to taxation are not limited to only "sales of interstate telecommunications service," but apply to sales "in connection with" the various listed exemptions including "sale of interstate telecommunications service."

MCI also argued that "value" is measured by "sale price" and, under the rules of statutory construction, sales must be measurable by "value," which is the "sale price." The statute uses "sales" throughout the exemptions and, if "sales" were not measured by the "sale price," then taxpayers and tax collectors would have no measure for sales.

If CCRC and PTRC are included as telecommunications services because they are in connection with or attributable to interstate telecommunications, then they must be exempted as being "in connection with" or attributable to the "sale" of "interstate telecommunication services." And MCI does not impermissibly read "price" in to the exemption, but rather reads the entire statute that outlines "value" of "services sold" (i.e., a sale) is "measured by the sale price."

MCI argued the CCRC and PTRC are excluded from service provider tax because they are factually indistinguishable from the surcharges that MRS specifically excludes from the service provider tax. MCI does not argue that the CCRC and PTRC are excluded because they are labeled surcharges, but that label is important to the analysis. MRS should follow its own guidance, which excludes CCRC and PTRC from the service provider tax.

C. The Parties' arguments regarding the service provider tax statute effective prior to July 18, 2008.

1. *The Assessor's Motion for Summary Judgment, MCI's Opposition, and the Assessor's Reply.*

The Assessor explained that a different statutory framework existed from March 1, 2008 to July 17, 2008, 36 M.R.S. §§ 2551, 2552, but the 2007-2008 statute is similar to the current statute with the relevant difference being that interstate and international telecommunications services were excluded from taxation. Telecommunications services were generally subject to service provider tax, but service that originated or terminated outside of Maine was excluded from the

7

definition of telecommunications service. The Assessor argued that PTRC and CCRC are charges and not a service that originated outside Maine or terminate outside of Maine. Thus, the Assessor argued CCRC and PTRC are still included in the definition of telecommunications service, included in the sale price of telecommunications service, and so they are subject to service provider tax.

### 2. *MCI's Motion for Summary Judgment, the Assessor's Opposition, and the MCI's Reply.*

MCI argued that prior to July 1, 2008, the taxation statute defined "telecommunications services" as "[t]he provision of 2-way interactive communications through the use of telecommunications equipment ... [but] does not include: ... service originating or terminating outside this State ...." MCI emphasized that if this Court finds that the statute is ambiguous, then this Court must follow well-settled law that statutes imposing taxes are to be construed most strongly against he government, and in favor of the citizen, and are not to be extended by implication beyond the clear import of the language used. A strict construction of the statute in favor of MCI dictates that the CCRC and PTRC surcharges are excluded from telecommunications services and not taxable because they are imposed solely in connection with and part of the "sale price" of interstate and international telecommunications.

MCI addressed MRS's interpretation of the statute. MCI argued that MRS issued guidance that discretionary surcharges that are the recovery of amounts that are required to be paid to Federal or state governments are excluded from the service provider tax, even when those surcharges are computed as a percentage of intrastate telecommunications service. According to MCI, MRS argued that CCRC and PTRC were taxable prior to July 17, 2008 because they were part of the consideration that a customer must pay for service. If the CCRC and PTRC were "part of the consideration" paid for service, the charges are only "part of the consideration paid" for interstate and international service, so they are excluded prior to July 17, 2008 and exempted after July 17, 2008.

### D. Standard of review.

The Court reviews the BOTA Decision de novo. 36 M.R.S. § 151-D(10)(I). Either the taxpayer or the assessor may raise on review in this Court "any facts, arguments or issues that relate to the final administrative decision, regardless of whether the facts, arguments or issues were raised during the proceeding being reviewed, if the facts, arguments or issues are not barred by any other provision of law." 36 M.R.S. § 151-D(10)(I). The court shall make its own determination as to all questions of fact or law, regardless of whether the questions of fact or law were raised before the audit division or BOTA. 36 M.R.S. § 151-D(10)(I). The burden of proof is on the taxpayer. 36 M.R.S. § 151-D(10)(I).

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the [fact finder] must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

When there are cross-motions for summary judgment, the rules for consideration of summary judgment are applied separately to each motion. *F.R. Carroll, Inc., v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646. Courts analyze each motion separately to give the opposing party the benefit of any reasonable inferences that can be drawn from the presented facts. *Id.* ¶ 8. As a result, this Court separately evaluates the Assessor's Motion for Summary Judgment and MCI's Motion for Summary Judgment.

E. CCRC and PTRC are excluded prior to July 18, 2008 and exempt beginning on July 18, 2008.

While the parties have stipulated to the facts, the Superior Court does not act in its usual deferential (M.R. Civ. P. 80C/Maine Administrative Procedures Act) capacity when reviewing decisions of the tax assessor, "rather the Superior Court serves as the 'forum of origin for a determination of both facts and law' when reviewing decisions of the Assessor pursuant to 36 M.R.S.A. § 151." *John T. Cyr & Sons v. Tax Assessor*, 2008 Me. Super. LEXIS 56, *11 (Jan. 16, 2008)(citing *Fairchild Semiconductor Corp.*, 1999 ME 170, ¶ 7 (quoting *Enerquin Air, Inc. v. State Tax Assessor*, 670 A.2d 926, 928 (Me. 1996))).

"The State's power to tax is strictly construed in favor of the taxpayer." *Community Telcoms. Corp. v. State Tax Assessor*, 684 A.2d 424, 426 (Me. 1996). "The interpretation of statutes levying taxes should not extend their provisions by implication beyond the clear import of the language used." *Id.* (citation omitted). To interpret any statute, court "look first to the plain meaning of the statutory language to give effect to the legislative intent." *Id.* (citation omitted). "In reviewing the plain language, [courts] consider not only the individual provision at issue, but also 'the whole statutory scheme off which the section at issue forms a part so that a harmonious result, presumably the intent of the legislature, may be achieved.'" *Id.* (citation omitted). "A plain language interpretation should not be confused with a literal interpretation, however." *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 20, 107 A.3d 621 (citations omitted). "Rather, courts are guided by a host of principles intended to assist in determining the meaning and intent of a provision even within the confines of a plain language analysis." *Id.* ¶ 20 (citations omitted). Courts "must interpret the plain language by taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation." *Id.* ¶ 21

(citations omitted). "In determining a statute's 'practical operation and potential consequences,' [courts] may reject any construction that is 'inimical to the public interest' or creates absurd, illogical, unreasonable, inconsistent, or anomalous results if an alternative interpretation avoids such results." *Id.* ¶ 21 (citations omitted). Courts may also read exclusions into a statute when to do otherwise would render the statute 'entirely at odds with its history and apparent intent.'" *Id.* ¶ 21 (citations omitted). Courts "examine the entirety of the statue, 'giving due weight to design, structure, and purpose as well as to aggregate language.'" *Id.* ¶ 22 (citations omitted).

When courts interpret a tax statute, "the plain meaning of the statute controls if the statute is unambiguous." *Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶ 10, 17 A.3d 667 (citation omitted). To resolve any ambiguity, courts "look to the legislative history of the statute to determine its meaning." *Id.* (citation omitted). In interpreting statutes, courts "seek to avoid 'absurd, illogical or inconsistent results.' *Id.* ¶ 10 (quoting *Stromberg-Carlson Corp.*, 2001 ME 11, ¶9, 765 A.2d at 569). "Words in a statute 'must be given meaning and not treated as meaningless and superfluous.'" *Id.* (quoting *Stromberg-Carlson Corp.*, 2001 ME 11, ¶9). Courts "will not read additional language into a statute." *Id.* (citing *Stromberg-Carlson Corp.*, 2001 ME 11, ¶9). As noted above, this Court does not accord any heightened deference to the Assessor in interpreting the tax statutes because the Superior Court is directed by statute to rule on questions of law de novo. *Id.* (citing *Enerquin Air, Inc.*, 670 A.2d at 928-29).

"A tax exemption statute is narrowly and strictly construed with all doubt and uncertainty as to its meaning being weighed against exemption." *Humboldt Field Research Inst. v. Town of Steuben*, 2011 ME 130, ¶ 5, 36 A.3d 873 (citing *Hurricane Island Outward Bound v. Town of Vinalhaven*, 372 A.2d 1043, 1046 (Me. 1977). "An exemption from taxation, while entitled to reasonable interpretation in accordance with its purpose, is not to be extended by application to situations not clearly coming within the scope of the exemption provisions." *John T. Cyr & Sons*, 2008 Me. Super. LEXIS 56, *11 (quoting *Harold MacQuinn, Inc. v. Halperin*, 415 A.2d 818, 820 (1980)).

This Court may give some weight to MRS's relevant Instructional Bulletin. "The construction of a statute utilized by those whose duty it is to make the statute operative is entitled to great deference by a court when called upon to construe the statute." *Brent Leasing Co. v. State Tax Assessor*, AP-97-061, 2000 Me. Super. LEXIS 116, *8 (June 6, 2000) (quoting *Robbins v. State Tax Assessor*, 536 A.2d 1127 (Me. 1988)). "Unless there is something 'in the language of the statute . . . which makes the interpretation given by the State Tax Assessor contrary to express legislative purpose, it is entirely appropriate to look to its contemporaneous construction by the [State Tax Assessor] as a guide.'" *Id.* at *8-9 (June 6, 2000) (quoting *Robbins*, 536 A.2d at 1129). "However, even though 'the Court' will usually defer to the assessor's interpretation of [an] exemption statute, the plain meaning of the statute always

controls over an inconsistent administrative interpretation." *Id. at* *9 (citing *UAH-Hydro Kennebec v. State Tax Assessor*, 659 A.2d 865 (Me. 1995); *Hudson Pulp & Paper Corp. v. Johnson*, 147 Me. 444, 88 A.2d 154 (1952)).

MRS made an assessment against MCI for service provider tax and interest for the period from March 1, 2008 to December 31, 2010. During this period, the Maine Legislature amended the service-provider-tax statute under 36 M.R.S. §§ 2551-2560 in P.L. 2007, c. 627, which became effective on July 18, 2008. Consequently, two different versions of the service-provider-tax statute apply to different parts of the audit period: before July 18, 2008, and beginning July 18, 2008.

Prior to July 18, 2008, Maine imposed tax on the value of telecommunications services. 36 M.R.S. § 2552(1)(E)(2007). Telecommunications services included "[t]he provision of 2-way interactive communications through the use of telecommunications equipment ... [but] does not include: service originating or terminating outside this State ...." 36 M.R.S. § 2551(20)(2007). Thus, the value of interstate and international telecommunication services is not taxed; their value is excluded. The value of telecommunications services "is measured by the sale price." 36 M.R.S. § 2552(2)(2007). "'Sale price' means the *total amount of consideration,* including cash, credit, property and services, for which personal property or services are *sold,* leased or rented, valued in money whether received in money or otherwise, without any deduction for the cost of materials used, labor or service costs, interested, losses and any other expense of the seller." 36 M.R.S. § 2551(15)(2007)(emphasis added). Both parties agree the CCRC and PTRC are part of the sale price.

As of July 18, 2008, the Legislature imposed the tax on the value of telecommunications services sold in Maine, 36 M.R.S. § 2552(1)(E)(2007); *see also BCN Telecom, Inc.*, 2015 Me. Super. LEXIS 271, *20, but sales of international and interstate telecommunications services are exempt from service provider tax. 36 M.R.S. § 2557(33), (34)(2007), *amended by* P.L. 2007, ch. 627, §§ 74, 75 (effective July 18, 2008).

Fundamentally, the court sees the State Tax Assessor as attempting to tax MCI's *plan of access* to long distance intrastate, interstate and international telecommunication services while excluding and exempting individual interstate and international communications. MCI argues the illogic of the Assessor's interpretation of the applicable statutes and stresses the correct relationship between "sales price" and "sales" as they mandate the treatment by Maine law of interstate and international communications.

It appears clear that the CCRC and PTRC charges are only billed to customers for interstate and international telecommunication services. The Legislature has made clear in its statutory language that it recognizes that it cannot impose a tax requirement on matters beyond the limits of the State of Maine. The two versions of

11

36 M.R.S. §§ 2551, 2552 and 2557 make clear the intent to exclude or exempt such matters from State taxation.

Because the definition of "sales price" means the total amount of consideration received as a result of "sales" of telecommunication services, the court does not consider there to be a statutory difference in its consideration of the application of the tax versus the exemption. The service provider tax is imposed on the "value" and the value is defined as the "sales price". Therefore, to the extent the total consideration received by MCI for "telecommunication services" is derived from sales of interstate or international telecommunications services, the "sales price", "value," is excluded prior to July 18, 2008 and exempt after July 18, 2008. To the extent the CCRC and PTRC are attributable to interstate or international service they are not taxable.

For reason so stated, the entry will be:

Petitioner's motion for summary judgment is DENIED; respondent's motion for summary judgment is GRANTED; the decision of the Maine Board of Tax Appeals in the matter of MCI COMMUNICATIONS, INC. v. MAINE REVENUE SERVICES, docket number BTA-2013-7, dated 9/12/2013 is AFFIRMED.

June 30, 2016

JUSTICE, SUPERIOR COURT

12